# Exhibit A-NFLPA-12



RECEIVED OCT 0 4 2010

**NATIONAL FOOTBALL LEAGUE**

October 1, 2010

Harold R. Henderson
*Executive Vice President*

Mr. Jon S. Fox
Fox, Bowman, Duarte
1621 114th Avenue, S.E., Suite 210
Bellevue, WA 98004

Mr. Lawrence Ferazani
NFL Management Council
280 Park Avenue
New York, NY 10017

Re: ▇▇▇ Appeal

Gentlemen:

On August 27, 2010 ▇▇▇ a player with the Seattle Seahawks, was notified in a letter from Adlopho Birch that he was suspended without pay for two regular season games for violating the NFL Personal Conduct Policy, rising out of a domestic violence incident. A timely appeal was filed, and that appeal was heard on September 24, 2010 in Washington, DC. Mr. ▇▇ was present, and was represented by his counsel, Mr. Jon Fox.

Mr. ▇▇ was arrested on April 10, 2010 in Issaquah, Washington for Assault in the Fourth Degree/Domestic Violence after an altercation with his girlfriend, ▇▇▇ at their home. He was released on bail and a "no contact" order was issued, restraining ▇▇ from contacting Ms ▇▇ in any fashion. In May 2010 Mr. ▇▇ was required to appear before Commissioner Goodell to review this incident and a recent charge for marijuana possession. (MC Exhibit B2.) Following that meeting he was disciplined for the drug charge, and warned that the domestic violence arrest could subject him to appropriate discipline once the charges were resolved. (MC Exhibit B2.) On August 18, 2010 Mr. ▇▇ entered into a Stipulated Order of Continuance ("SOC") under which the case was continued for 18 months under conditions to which he agreed, including attending a domestic violence treatment program and performing 25 hours of community service. Following this disposition of the charge against him Mr. ▇▇ was notified that he was suspended for two games, which gave rise to this appeal. (MC Exhibit C3.)

Two significant documents were introduced in evidence in this case which were not presented at the June meeting with Commissioner Goodell – a court record from Bellevue, Washington concerning an arrest of ▇▇▇ for Assault/Domestic Violence (Player's Exhibit B) and a transcript of an interview of ▇▇▇ by Mr. Fox on May 16, 2010. (Players Exhibit C.) Those documents are key to Mr. ▇▇ defense in this case, namely that ▇▇▇ cannot be believed on several important points about the facts surrounding the altercation. The first goes to her credibility, and raises the question whether the initial discipline

Mr. Jon S. Fox
Mr. Lawrence Ferazani
October 1, 2010
Page 2

would be different had it been known that she had been charged with a domestic assault after hitting and scratching her boyfriend upon the breakup of their relationship four years ago. The report was obtained <u>after</u> the meeting in New York. The second document not presented to the Commissioner is a transcript of her interview with Mr. Fox on May 16, 2010. (Player Exhibit C.) Many inconsistencies, both internal to the transcript and with her prior statements, were pointed out at the hearing. No explanation was offered for withholding the transcript at the June meeting. Mr. Fox said, "I regret that. In looking at it now, I can see I probably should have done that." (Transcript, 17.)

Mr. ▅ testimony about the altercation on April 10, 2010 is quite consistent with the statement he gave to police prior to his arrest: an argument started with Ms ▅ when he arrived home around 9:30 p.m. because he was seeing other women; while he was asleep she discovered telephone numbers in his cell phone of other girls; he wanted her to leave his residence because they had just broken up; he called the police to get her to leave peacefully. The police report described him as "calm and cooperative." (MC Exhibit C1, page 6, Transcript pages 38-40.)

Ms. ▅ statement to police indicated that she found the numbers of other women on his phone and when she could not unlock it, gave it back to him. She reported that he attempted to take her phone, following her upstairs where he "grabbed her ponytail and pulled her back down the stairs"; and she again attempted to go up the stairs he grabbed and scratched her; and that he pushed her backwards from the top of the stairs causing her to fall backward to the bottom of the stairs. She also said they "pushed each other around in the foyer when she knocked a lamp from the table, causing it to break." (MC Exhibit C1, page 4.) Her handwritten statement says ▅ was attempting, while she was talking to her mother, to take her cell phone from her; and that he tried to pull her down the stairs by her ponytail; he shoved her backward down the stairs and "I then called my mother." (MC Exhibit C1, pages 8-9.) The police officer at the scene observed that she was "visibly shaking and upset", began to cry numerous times, and was hesitant to tell what had happened. (MC Exhibit C1.)

In the later interview with Mr. Fox, Ms. ▅ had some different recollections about that evening. She stated he was trying to get <u>a</u> phone from her not <u>her</u> phone. (Player's Exhibit C, page 1.) He wanted his phone from her. (Player's Exhibit C, page 6.) He pushed her down the stairs in the midst of a struggle. "I don't think he was trying to hurt me. I think he was just trying to get the phone." She also said, as to his pulling her ponytail, that her hair just got tangled while they were scuffling on the steps, that he didn't pull it or drag her around. Perhaps the passage of time cooled her anger, but it was a story different than the one she gave the police.

Mr. Jon S. Fox
Mr. Lawrence Ferazani
October 1, 2010
Page 3

In this appeal the player does not challenge the propriety of imposing discipline on him, but rather argues that the discipline imposed is too harsh in view of mitigating evidence offered at the hearing. (Transcript, page 23, page 54.) He believes that the facts show a much lesser level of culpability on his part and much exaggeration by the victim.

In a case such as this it is difficult to decide what amount of discipline is right. Obviously a measure of discretion is involved in making such a judgment. Here it is likely that a recent unrelated case under the League Policy on Substances of Abuse had some weight. Domestic violence by a player upon a domestic partner is indeed deplorable, and discipline administered should reflect the seriousness with which the League views such conduct. One cannot say the initial discipline imposed was clearly unwarranted under the circumstances known.

On the other hand, the facts of this incident are less than clear, and some potentially significant facts were not before the Commissioner's office when the discipline was determined. Mr. ▮ came to Washington to be heard. He was credible in his recollection of the facts, and in his continuing concern for an ex-girlfriend. He appeared to be taking seriously the counseling required by court and the League. He has complied fully with all conditions of the SOC.

After considering all the evidence and arguments presented for this record, I conclude that justice would be served in this instance by reducing the discipline. Therefore, the appeal is granted, and the discipline assessed hereby is modified to a one game suspension plus a fine in the amount of one-seventeenth of the player's 2010 Paragraph 5 salary. I hope Mr. ▮ will enjoy a successful career in the NFL without further conduct issues, and caution him that any future discipline will likely be more severe in view of his record.

Sincerely,

*Harold R. Henderson*

HAROLD R. HENDERSON

cc: Tom DePaso (NFLPA)