# Exhibit A-NFLPA-49



NATIONAL FOOTBALL LEAGUE

**B. Todd Jones**
*Senior Vice President*
*Special Counsel, Conduct*

**CONFIDENTIAL**

August 11, 2017

<u>**Via Electronic Delivery**</u>
Mr. Ezekiel E. Elliott
c/o Ned Ehrlich, Esq. and Heather McPhee, Esq.
NFL Players Association
1133 20th Street, NW
Washington, DC 20036

Dear Mr. Elliott:

Pursuant to Article 46 of the Collective Bargaining Agreement, this will set forth Commissioner Goodell's disciplinary decision in connection with your actions between July 17 and July 21, 2016, and separately on March 11, 2017.

## BACKGROUND

In late July of 2016, public sources reported that during the week of July 16, 2016, you were allegedly involved in multiple instances of physical violence against Ms. Tiffany Thompson in Columbus, Ohio. At the time you and Ms. Thompson were in an intimate relationship and spent considerable time together, including at your residence in Columbus. On July 22, 2016, Ms. Thompson reported these incidents to the Columbus Police Department, which initiated an investigation. There was no arrest made and ultimately a decision not to pursue a criminal prosecution was publicly announced by the Columbus City Attorney's office on September 6, 2016.

The League also learned through public sources that on March 11, 2017, while watching a St. Patrick's Day parade in Dallas, Texas from the balcony of a local restaurant, you pulled down the shirt of a young woman, exposing and touching her breast. This incident was captured on video and posted on social media. Again, no arrest was made nor was a complaint filed by the young woman.

Mr. Ezekiel E. Elliott
Page 2

Each of these incidents involved allegations of conduct that is expressly prohibited by the League's Personal Conduct Policy, including "[a]ctual or threatened physical violence against another person." Even when a player is not charged with a crime, "he may still be found to have violated the policy if the credible evidence establishes that he engaged in conduct prohibited by this Personal Conduct Policy." As the Policy states, "[i]t is not enough simply to avoid being found guilty of a crime. We are all held to a higher standard and must conduct ourselves in a way that is responsible, promotes the values of the NFL, and is lawful."

Consequently, the League undertook an extensive investigation of the allegations. With respect to the incidents during the week of July 16, 2016, League investigators interviewed more than a dozen witnesses, including Ms. Thompson, and examined all available evidence, including photographic and digital evidence, thousands of text messages and other records of electronic communications. In addition, two medical experts were consulted regarding identification, causation and aging of certain injuries to Ms. Thompson as depicted in the relevant photos and provided written reports that were shared with your representatives.

With respect to the March 11, 2017 incident, League investigators reviewed the available video evidence and interviewed the woman whose shirt you pulled down.

On June 7, 2017, we provided you and your representatives copies of our Investigative Reports on both the Columbus and Dallas matters for your review and comment. Copies of the expert medical reports were provided to you on July 6, 2017.

The Policy states that in evaluating any potential violation, expert and independent advisors may be consulted by the Commissioner as needed. Such advisors may include former players and others with appropriate backgrounds and experience in law enforcement, academia, judicial and public service, mental health, and persons with other specialized subject matter expertise. In this instance, four such individuals of varying, relevant backgrounds were asked to provide the Commissioner with their perspective and expertise on a number of issues, including the assessment of the various evidentiary issues and evaluation of the statements and behavior of the parties involved:

- Mr. Peter Harvey, Esq., former Attorney General for the State of New Jersey;
- Mr. Kenneth Houston, former player and member of the Pro Football Hall of Fame;
- Ms. Tonya Lovelace, CEO of the Women of Color Network, Inc.; and
- Ms. Mary Jo White, Esq., Former United States Attorney and former Chair of the Securities and Exchange Commission.

On June 26, 2017, you and your representatives had an opportunity to meet personally with these independent advisors to discuss your recollection of the events of the week of July 16, 2016, your relationship with Ms. Thompson, the March, 2017 incident, and other issues you and your representatives believed were pertinent to our review. The advisors had an opportunity to

Mr. Ezekiel E. Elliott
Page 3

engage directly in discussions with you, and to hear your counsel's assessment of the legal, evidentiary and credibility issues presented in this case. A transcript of that meeting was made and shared with your representatives that same week. On July 7 and July 17, 2017, your representatives provided both the independent advisors and our office with written submissions (accompanied by detailed supporting materials) that addressed the issues discussed at this meeting and in the Investigative Reports.

The Commissioner has now had the opportunity to review the record, including the Investigative Reports, the transcript of the June 26, 2017 meeting, and the materials submitted on your behalf. He also consulted separately with each of the independent advisors concerning the evidence and the points made by your representatives in their oral and written submissions. In that respect, the advisors individually were of the view that there is substantial and persuasive evidence supporting a finding that you engaged in physical violence against Ms. Thompson on multiple occasions during the week of July 16, 2016. The Commissioner has considered those views in the context of his evaluation of the record and the advice and recommendations of the advisors have helped to inform his findings and conclusions, which are set forth below.

## FINDINGS

a. Columbus, Ohio Incidents

Based on the entire record, the credible evidence establishes that on multiple occasions during the week of July 16, 2016, you used physical force against Ms. Thompson resulting in her injury, specifically as follows:

- During the early morning hours of July 17, 2016, there was an altercation at the Canvasback Lane apartment in Columbus, Ohio in which you used physical force that caused injuries to Ms. Thompson's arms, neck and shoulders. These injuries are portrayed in several photographs (3 series) confirmed by forensic analysis to have been taken by Ms. Thompson the following day and subsequently sent to her aunt with a text message stating "Absuive" [sic]. Several of these injuries are also portrayed in photographs taken by the Columbus Police Department on July 22, 2016 (7 series). Some of these injuries are also depicted in photographs provided by the Thompson family to the Columbus City Attorney's office on July 22, 2016 (8 series). Collectively, a review of these photographs by both medical experts determined that the injuries to her arms, neck and shoulders appear recent and consistent with Ms. Thompson's description of the incident and how they occurred.

- On the morning of July 19, 2016, there was an altercation at the Canvasback Lane apartment in which you used physical force that caused injuries to Ms. Thompson's face, arms, wrist and hands. These injuries are portrayed in photographs (6 series) confirmed by forensic analysis to have been taken by Ms. Thompson on the afternoon of July 21,

Mr. Ezekiel E. Elliott
Page 4

2016 and concurrently sent via text message to her mother.  These injuries are also
portrayed in the photographs taken by the Columbus Police Department on July 22, 2016
(7 series).  A review of these photographs by both medical experts determined that the
injuries displayed appear recent and consistent with Ms. Thompson's description of the
incident and how they occurred.

▪   During the early morning hours of July 21, 2016, there was an altercation at the
Canvasback Lane apartment in which you used physical forced that caused injuries to
Ms. Thompson's face, neck, arms, knee and hips.  Ms. Ayrin Mason stated in her
interview that she observed these injuries to Ms. Thompson later that same day.  These
injuries are portrayed in a photograph taken by Ms. Thompson the afternoon of July 21,
2016 (6C), and in photographs provided by the Thompson family to the Columbus City
Attorney's office on July 22, 2016 (8 and 10 series), or taken by that office on the same
date (9 series).  A review of these photographs by both medical experts determined that
the injuries displayed appear recent and consistent with Ms. Thompson's description of
the incident and how they occurred.

In the course of the investigation and during the meeting with the independent advisors,
you and your representatives raised multiple issues regarding the complaining witness, which
deserved and received careful consideration by the Commissioner.  In order to address these
issues appropriately, no finding, and no disciplinary action, was based simply on one individual's
statements.  Rather, the findings set forth above are based on a combination of photographic,
medical, testimonial and other evidence that is sufficiently credible in the Commissioner's
judgment to establish the facts, even allowing for concerns you and your representatives have
advanced about the complaining witness's credibility.  As discussed earlier, his judgment in this
respect is informed in part by the independent advisors.  It is also informed by the views of the
Columbus city prosecutor who handled the investigation.  The city prosecutor has stated both
publicly and to our investigator that after interviewing Ms. Thompson several times "[w]e never
concluded that she was lying to us."  He also said that, "we generally believed her for all of the
incidents."

Irrespective of the characterization of Ms. Thompson's statements to law enforcement
and investigators regarding the incidents identified above, the photographic and medical forensic
evidence corroborates many critical elements of the allegations regarding the causes of her
injuries.  It is also important to note that, while there may be conflicting testimonial evidence
regarding the nature and substance of conversations, there is no dispute that you and Ms.
Thompson were together in the same location on the dates identified, and no evidence to suggest
that anyone else could have caused these injuries.

Thus, the Commissioner carefully considered the issues raised by the NFLPA on your
behalf regarding witness credibility and alternative causation theories.  However, in the
Commissioner's judgment, there has been no persuasive evidence presented on your behalf with

Mr. Ezekiel E. Elliott
Page 5

respect to how Ms. Thompson's obvious injuries were incurred other than conjecture based on the presence of some of her bruising which pre-dates your arrival in Columbus on July, 16, 2016.

    b.  <u>St. Patrick's Day Incident and Cooperation with the Investigation</u>

The Commissioner also has determined that the March 11, 2017, St. Patrick's Day parade incident in Dallas will not be considered separately as a basis for additional discipline under the Policy given the circumstances surrounding the incident. You should understand, however, that your behavior during this event was inappropriate and disturbing, and reflected a lack of respect for women. When viewed together with the July incidents, it suggests a pattern of poor judgment and behavior for which effective intervention is necessary for your personal and professional welfare.

Finally, while there are some questions with respect to the completeness of your cooperation with the investigation, the Commissioner has not found a violation of the Policy based on your lack of cooperation and no discipline will be imposed on that basis.

## DECISION

With respect to discipline for violations that involve physical force against a woman in the context of an intimate relationship, the Policy is clear – a first violation subjects the violator to a baseline suspension without pay of six games, with consideration given to any aggravating or mitigating factors. After reviewing the record, and having considered the advice of the independent advisors on this point, the Commissioner has determined that the evidence does not support finding either mitigating or aggravating factors.

Accordingly, the Commissioner has determined the following:

1.     You are hereby suspended without pay for six (6) regular-season games, subject to appeal.

2.     You must have no further adverse involvement with law enforcement, and must not commit any additional violations of league policies. In that respect, you should understand that another violation of this nature may result in your suspension or potential banishment from the NFL.

Additionally, you are directed to engage a qualified professional, in consultation with the League and your current club, to arrange a clinical evaluation. Should counseling or treatment be recommended, you will be expected to comply with those recommendations. You also will provide contact information and any necessary releases to allow our office to monitor your compliance with the evaluation and any follow-up care, including meetings with you and any treating clinicians as appropriate. These steps are intended to assist you in addressing

Mr. Ezekiel E. Elliott
Page 6

proactively the issues revealed during the course of this investigation.  While this is a serious matter, it by no means suggests a belief that you cannot have a long and productive career in the NFL.  You will have substantial resources available to you from your club, and from our office, to assist you in learning how to make better decisions and avoid problematic situations.  Our goal is for you to have as successful a career as possible.  If you genuinely learn from this incident, and commit yourself to continued personal development, there is every reason to be optimistic about your future in and beyond the NFL.

If you wish to appeal this decision, you must notify Adolpho Birch of our office at NFLMCPolicy@NFL.com within three days of receiving this letter.  If you do so, a hearing will be scheduled promptly at which either the Commissioner or his designee will preside.

Sincerely,

B. TODD JONES

cc:     Commissioner Goodell
        Jerry Jones
        Adolpho Birch