# Exhibit A- NFLPA-51



**LEGAL DEPARTMENT**

August 18, 2017

**VIA E-MAIL**

Commissioner Roger Goodell
B. Todd Jones, Esq.
Adolpho Birch, Esq.
National Football League
345 Park Avenue
New York, NY 10154

Re:     **Ezekiel Elliott Article 46 Appeal—Request for Documents and Witnesses**

Dear Roger, Todd and Adolpho:

We write concerning Ezekiel Elliott's appeal of his six-game suspension, which was imposed by Commissioner Goodell on August 11, 2017.  In particular, we write to request the production of certain documents and witnesses which are required to afford Mr. Elliott a fundamentally fair hearing.  The requests set forth herein are consistent with the express terms of the CBA, past precedent in Article 46 proceedings (including the "Bounty" proceeding), basic principles of due process, and the NFL's publicly stated commitment to transparency and thoroughness in its process for these serious matters.

**Request for the Production of Documents**

The NFLPA requests that the NFL produce the following Documents[1] in its possession, custody, or control:

(1) All Documents regarding the NFL's six investigative interviews [2] of Tiffany Thompson, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Ms. Thompson's interviews, and all NFL investigative notes, memoranda or other Documents relating to Ms. Thompson's interviews.

---

[1] "Documents" includes electronic and hardcopy documents (including handwritten notes), photographs, recordings (including video and audio recordings in any medium), tangible objects, or copies or portions of any of these items.

[2] The following interview dates were cited in the NFL's Investigation Report: September 26, 2016, October 6, 2016, November 1, 2016, November 16, 2016, November 30, 2016 and December 5, 2016.

  




**LEGAL DEPARTMENT**

(2) All communications between the NFL (including its investigators) and Ms. Thompson regarding the League's investigation of Mr. Elliott, including all e-mail and text exchanges between the NFL and Ms. Thompson relating to the NFL's investigation.

(3) All Documents reflecting "the advice and recommendations" provided to Commissioner Goodell or other NFL executives by "independent advisors" Mary Jo White, Kenneth Houston, Tonya Lovelace, and Peter Harvey, which Commissioner Goodell stated "helped to inform [the] findings and conclusions" set forth in Mr. Elliott's August 11, 2017 discipline letter. Discipline Letter at 2-4.

(4) All Documents (including, but not limited to, the NFL's investigators' notes), data and communications relating to the alleged encounters between Mr. Elliott and Ms. Thompson on July 17, 19 and 21, 2016.

(5) All Documents regarding the NFL's November 1, 2016 interview of Robert Tobias, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Mr. Tobias' interview, and all NFL investigative notes, memoranda or other Documents relating to Mr. Tobias' interview.

(6) All Documents regarding the NFL's October 6, 2016, November 15, 2016, and April 7, 2017 interviews of Elaine Glenn, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Ms. Glenn's interviews, and all NFL investigative notes, memoranda or other Documents relating to Ms. Glenn's interviews.

(7) All Documents regarding the NFL's October 6, 2016 and October 13, 2016 interviews of Ayrin Mason, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Ms. Mason's interviews, and all NFL investigative notes, memoranda or other Documents relating to Ms. Mason's interviews.

(8) All "available evidence, including photographic and digital evidence . . . text messages and other records of electronic communications" cited in Mr. Elliott's discipline letter which has not been previously produced to the NFLPA.



**LEGAL DEPARTMENT**

## Request for the Production of Witnesses

The NFLPA requests that the NFL fulfill its obligation to arrange for the attendance of the following witnesses at Mr. Elliott's appeal hearing:

(1)  **Tiffany Thompson**:  Ms. Thompson's accusations against Mr. Elliott are the basis for Mr. Elliott's proposed discipline, and she is the *only* eyewitness to the alleged encounters with Mr. Elliott.  Under these circumstances, it is black letter law that Mr. Elliott has the basic due process right to confront and cross-examine Ms. Thompson at the appeal hearing to rebut her serious allegations and challenge his discipline.  Elkouri & Elkouri, *How Arbitration Works 356* (Kenneth May ed., 6th ed. Supp. 2010) (the right to confront and cross examine an adverse witness in discipline or discharge cases is a part of arbitral "due process" jurisprudence).

Depriving Mr. Elliott of his fundamental right to question Ms. Thompson would deny him the fundamental fairness required in all arbitration proceedings and render the arbitration process a sham.  This is especially true in an appeal like this, where the NFL is seeking to impose discipline without any criminal or other government action or any admission by the player that the alleged conduct occurred; this utter dearth is the distinguishing fact which makes it essential for fundamental fairness to have the accuser, Ms. Thompson, testify at the appeal hearing.

Compelling Ms. Thompson's live testimony at the hearing is also required by Article 46.  Specifically, as you know, Commissioner Tagliabue ruled in the "Bounty" proceeding that Article 46 required the NFL to produce the players' accusers—Mike Cerullo and Gregg Williams—at the hearing for cross-examination, and notwithstanding the fact that neither Messrs. Cerullo nor Williams were employed by the NFL.  *See, e.g.,* NFLPA, Fujita, *et al.* v. NFL: Nov. 2, 2012 Tagliabue Pre-Hearing Order No. 1; Nov. 20, 2012 Tagliabue Notice to Counsel re Hearing Schedule at 1.

Relatedly, like Messrs. Williams and Cerullo in the "Bounty" investigation, there is no dispute that Ms. Thompson has been cooperating with the NFL.  She has participated in no less than *six* (6) interviews with the League's investigators, and she voluntarily provided the NFL with, among other things, her mobile device, thousands of communications, and dozens of photographs which she contends support her allegations.



**LEGAL DEPARTMENT**

(2)   **Lisa Friel and Kia Roberts**: Ms. Friel and Ms. Roberts are the lead NFL investigators of Mr. Elliott's investigation, and authored the NFL's June 6, 2017 investigative report regarding Mr. Elliott, which was expressly relied upon by Commissioner Goodell in imposing Mr. Elliott's discipline.  Discipline Letter at 3.

(3)   **Dr. Lone Thanning and Dr. Lorraine Giordano**:  Drs. Thanning and Giordano were retained by the League as medical experts in Mr. Elliott's investigation, and "were consulted regarding identification, causation and aging of certain injuries to Ms. Thompson."  Discipline Letter at 2.  Moreover, Commissioner Goodell expressly relied upon the medical experts' findings in imposing Mr. Elliott's discipline.  *Id.* at 3-4.

The NFLPA and Mr. Elliott request the NFL's response to the requests set forth herein no later than 5 p.m. on Monday, August 21, 2017.

Very truly yours,

Heather M. McPhee
NFLPA Associate General Counsel


cc:   Tom DePaso, Esq.
      Ezekiel Elliott
      Ned Ehrlich, Esq.
      Frank Salzano, Esq.
      Jeffrey Kessler, Esq.
      Jon Amoona, Esq.
      Rocky Arceneaux