# Exhibit A-NFLPA-53



**NFL PLAYERS**
**A S S O C I A T I O N**

**LEGAL DEPARTMENT**

August 22, 2017

Harold Henderson, NFL Hearing Officer

**VIA E-MAIL**

**Re:      Ezekiel Elliott Article 46 Appeal – Motion to Compel**

Dear Mr. Henderson:

We write on behalf of the NFLPA and Mr. Ezekiel Elliott to request that you order the NFL to produce certain witnesses and documents in connection with the appeal hearing in this matter, which is scheduled to be heard by you next Tuesday, August 29, 2017.

On August 18, 2017, the NFLPA sent the NFL its written requests for documents and witnesses in connection with the appeal hearing.  Ex. A.  On August 22, 2017, Mr. Birch informed the NFLPA that the League was refusing to produce nearly all of the documents and witnesses that the Union requested.  Ex. B.  As explained below, the documents and witnesses requested by the NFLPA are both fundamental to Mr. Elliott's right to a fair appeal hearing and consistent with Article 46 precedent.

**Witnesses**:

A)      **Tiffany Thompson**:  Ms. Thompson is *the* central material witness in this matter, and the League's refusal to produce her at the hearing cannot be sustained as a matter of fundamental fairness or in accordance with Article 46 precedent.

Simply put, Ms. Thompson's testimony is absolutely essential if Mr. Elliott is going to have any semblance of a fair hearing in this matter.  Mr. Elliott was never criminally charged, and the inflammatory allegations levied by his accuser Ms. Thompson formed the basis for Commissioner Goodell's proposed discipline.  Ms. Thompson's credibility is therefore at the heart of this case, and Mr. Elliott has a due process right to cross-examine her at his appeal hearing.[1]

Denying Mr. Elliott his right to test the veracity of Ms. Thompson's allegations would not only fly in the face of fundamental fairness, but established precedent under Article 46 as well, which makes clear that the hearing officer has a duty to compel the testimony of relevant material witnesses.

---

[1] *Boise Cascade Corp.*, 114 Lab. Arb. Rep. (BNA) 1379, 1384 (2000) (Crider, Arb.) (finding that fundamental fairness calls for an employee to be "given the opportunity to face and cross-examine his accusers at the arbitration table").

  



**LEGAL DEPARTMENT**

Specifically, in the *Bounty* proceeding, Commissioner Tagliabue ruled that Article 46 required the NFL to produce the players' accusers—Mike Cerullo and Gregg Williams—at the hearing for cross-examination, notwithstanding the fact that neither Messrs. Cerullo nor Williams were employed by the NFL. *See, e.g.,* NFLPA, Fujita, *et al.* v. NFL: Nov. 2, 2012 Tagliabue Pre-Hearing Order No. 1 (Ex. C); Nov. 20, 2012 Tagliabue Notice to Counsel re Hearing Schedule at 1 (Ex. D). Like Messrs. Williams and Cerullo in the *Bounty* investigation, there is *no* dispute that Ms. Thompson has been fully cooperating with the NFL. She has participated in no less than *six* (6) interviews with the League's investigators, and she voluntarily provided the NFL with, among other things, her mobile device, thousands of communications, and dozens of photographs which she contends support her allegations. Similarly, in the *Rice* proceeding, Judge Jones ruled that the Article 46 hearing officer must "compel[] the witnesses necessary for the hearing to be fair." *See* Decision on Discovery and Hearing Witnesses (Ex. E) at 2. In that regard, Judge Jones ordered the NFL to produce, among others, Commissioner Goodell, holding that denying Mr. Rice the right to cross-examine the Commissioner "would prevent Mr. Rice from presenting his case . . . ." *Id.*

Like the players involved in *Bounty* and *Rice*, Mr. Elliott has the right under Article 46 to cross-examine material witnesses, especially where, as here, the material witness is also the player's accuser. Denying Mr. Elliott this fundamental right would leave Ms. Thompson's allegations untested and, in turn, deny him the right to challenge his discipline. Ms. Thompson's testimony must therefore be compelled.

B)    **Kia Roberts**: The NFL should be ordered produce its Director of Investigations, who was integral in conducting the League's investigation; Ms. Roberts conducted numerous interviews of the accuser, and the NFLPA believes that she also conducted several other witness interviews. As discussed below, the NFL chose not to audio record and transcribe the vast majority of witness interviews, and it must make available for live testimony and cross-examination a senior NFL employee who was central to the League's investigation.

C)    **Dr. Lone Thanning and Dr. Lorraine Giordano**: Drs. Thanning and Giordano were retained by the League as medical experts in Mr. Elliott's investigation, and "were consulted regarding identification, causation and aging of certain injuries to Ms. Thompson." Ex. F, Discipline Letter at 2. Moreover, Commissioner Goodell expressly relied upon the medical experts' findings in imposing Mr. Elliott's discipline. *Id.* at 3-4. They both reside or practice in New York, and thus the NFL should be compelled to produce them for live testimony and cross-examination.



**LEGAL DEPARTMENT**

**Documents/Materials**

Mr. Birch's letter states the NFL's refusal to produce any of the NFL investigators' notes from the interviews of the witnesses that they refuse to present for live testimony and cross-examination (*see* Ex. A, Requests 1, 2, 5-7).  This refusal to produce obviously relevant documents also flies in the face of fundamental fairness, and Article 46 precedent in *Bounty*, in which Commissioner Tagliabue ordered the NFL to produce, among other things, NFL investigator memoranda (over the NFL's objections that such memoranda constituted protected attorney work product).

The NFL controlled its entire protracted investigative process while fully cognizant of its obligations to a player who appeals Article 46 discipline; since it orchestrated its own process in order to avoid audio recording and transcription of the vast majority of its witness interviews, the NFL must be compelled to produce the records of communications with those witnesses in the form of investigators' notes.

Similarly, the NFL should be compelled to produce any records of communications with the supposedly "independent advisors" who they have publicly proclaimed as contributing to the transparency of their process.  *See* Request 3.

The requests enumerated in the NFLPA's August 18, 2017 letter were limited in scope and aimed to require the NFL to simply meets it obligation to afford Mr. Elliott a fair, transparent appeal process, and thus the NFL should be ordered to fully comply with those requests.

In light of the rapidly approaching hearing date, we respectfully request that you convene a telephonic hearing on these matters tomorrow, August 23, 2017, before 3p.m. EDT.

Respectfully submitted,

Heather M. McPhee
NFLPA Associate General Counsel

cc:    Tom DePaso
       Ned Ehrlich
       Jeffrey Kessler



**LEGAL DEPARTMENT**

# EXHIBIT A



**NFL PLAYERS**
**A S S O C I A T I O N**

**LEGAL DEPARTMENT**

August 18, 2017

**VIA E-MAIL**

Commissioner Roger Goodell
B. Todd Jones, Esq.
Adolpho Birch, Esq.
National Football League
345 Park Avenue
New York, NY 10154

Re:     **Ezekiel Elliott Article 46 Appeal—Request for Documents and Witnesses**

Dear Roger, Todd and Adolpho:

We write concerning Ezekiel Elliott's appeal of his six-game suspension, which was imposed by Commissioner Goodell on August 11, 2017.  In particular, we write to request the production of certain documents and witnesses which are required to afford Mr. Elliott a fundamentally fair hearing.  The requests set forth herein are consistent with the express terms of the CBA, past precedent in Article 46 proceedings (including the "Bounty" proceeding), basic principles of due process, and the NFL's publicly stated commitment to transparency and thoroughness in its process for these serious matters.

**Request for the Production of Documents**

The NFLPA requests that the NFL produce the following Documents[1] in its possession, custody, or control:

(1) All Documents regarding the NFL's six investigative interviews [2] of Tiffany Thompson, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Ms. Thompson's interviews, and all NFL investigative notes, memoranda or other Documents relating to Ms. Thompson's interviews.

---

[1] "Documents" includes electronic and hardcopy documents (including handwritten notes), photographs, recordings (including video and audio recordings in any medium), tangible objects, or copies or portions of any of these items.

[2] The following interview dates were cited in the NFL's Investigation Report: September 26, 2016, October 6, 2016, November 1, 2016, November 16, 2016, November 30, 2016 and December 5, 2016.

 




**LEGAL DEPARTMENT**

(2) All communications between the NFL (including its investigators) and Ms. Thompson regarding the League's investigation of Mr. Elliott, including all e-mail and text exchanges between the NFL and Ms. Thompson relating to the NFL's investigation.

(3) All Documents reflecting "the advice and recommendations" provided to Commissioner Goodell or other NFL executives by "independent advisors" Mary Jo White, Kenneth Houston, Tonya Lovelace, and Peter Harvey, which Commissioner Goodell stated "helped to inform [the] findings and conclusions" set forth in Mr. Elliott's August 11, 2017 discipline letter.  Discipline Letter at 2-4.

(4) All Documents (including, but not limited to, the NFL's investigators' notes), data and communications relating to the alleged encounters between Mr. Elliott and Ms. Thompson on July 17, 19 and 21, 2016.

(5) All Documents regarding the NFL's November 1, 2016 interview of Robert Tobias, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Mr. Tobias' interview, and all NFL investigative notes, memoranda or other Documents relating to Mr. Tobias' interview.

(6) All Documents regarding the NFL's October 6, 2016, November 15, 2016, and April 7, 2017 interviews of Elaine Glenn, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Ms. Glenn's interviews, and all NFL investigative notes, memoranda or other Documents relating to Ms. Glenn's interviews.

(7) All Documents regarding the NFL's October 6, 2016 and October 13, 2016 interviews of Ayrin Mason, including all transcripts and recordings (including, but not limited to, all audio, video, and digital recordings) of Ms. Mason's interviews, and all NFL investigative notes, memoranda or other Documents relating to Ms. Mason's interviews.

(8) All "available evidence, including photographic and digital evidence . . . text messages and other records of electronic communications" cited in Mr. Elliott's discipline letter which has not been previously produced to the NFLPA.



**LEGAL DEPARTMENT**

## Request for the Production of Witnesses

The NFLPA requests that the NFL fulfill its obligation to arrange for the attendance of the following witnesses at Mr. Elliott's appeal hearing:

(1)   **Tiffany Thompson**:  Ms. Thompson's accusations against Mr. Elliott are the basis for Mr. Elliott's proposed discipline, and she is the *only* eyewitness to the alleged encounters with Mr. Elliott.  Under these circumstances, it is black letter law that Mr. Elliott has the basic due process right to confront and cross-examine Ms. Thompson at the appeal hearing to rebut her serious allegations and challenge his discipline.  Elkouri & Elkouri, *How Arbitration Works 356* (Kenneth May ed., 6th ed. Supp. 2010) (the right to confront and cross examine an adverse witness in discipline or discharge cases is a part of arbitral "due process" jurisprudence).

Depriving Mr. Elliott of his fundamental right to question Ms. Thompson would deny him the fundamental fairness required in all arbitration proceedings and render the arbitration process a sham.  This is especially true in an appeal like this, where the NFL is seeking to impose discipline without any criminal or other government action or any admission by the player that the alleged conduct occurred; this utter dearth is the distinguishing fact which makes it essential for fundamental fairness to have the accuser, Ms. Thompson, testify at the appeal hearing.

Compelling Ms. Thompson's live testimony at the hearing is also required by Article 46.  Specifically, as you know, Commissioner Tagliabue ruled in the "Bounty" proceeding that Article 46 required the NFL to produce the players' accusers—Mike Cerullo and Gregg Williams—at the hearing for cross-examination, and notwithstanding the fact that neither Messrs. Cerullo nor Williams were employed by the NFL.  *See, e.g.,* NFLPA, Fujita, *et al.* v. NFL*:* Nov. 2, 2012 Tagliabue Pre-Hearing Order No. 1; Nov. 20, 2012 Tagliabue Notice to Counsel re Hearing Schedule at 1.

Relatedly, like Messrs. Williams and Cerullo in the "Bounty" investigation, there is no dispute that Ms. Thompson has been cooperating with the NFL.  She has participated in no less than *six* (6) interviews with the League's investigators, and she voluntarily provided the NFL with, among other things, her mobile device, thousands of communications, and dozens of photographs which she contends support her allegations.



**LEGAL DEPARTMENT**

(2) **Lisa Friel and Kia Roberts**: Ms. Friel and Ms. Roberts are the lead NFL investigators of Mr. Elliott's investigation, and authored the NFL's June 6, 2017 investigative report regarding Mr. Elliott, which was expressly relied upon by Commissioner Goodell in imposing Mr. Elliott's discipline. Discipline Letter at 3.

(3) **Dr. Lone Thanning and Dr. Lorraine Giordano**: Drs. Thanning and Giordano were retained by the League as medical experts in Mr. Elliott's investigation, and "were consulted regarding identification, causation and aging of certain injuries to Ms. Thompson." Discipline Letter at 2. Moreover, Commissioner Goodell expressly relied upon the medical experts' findings in imposing Mr. Elliott's discipline. *Id.* at 3-4.

The NFLPA and Mr. Elliott request the NFL's response to the requests set forth herein no later than 5 p.m. on Monday, August 21, 2017.

Very truly yours,

Heather M. McPhee
NFLPA Associate General Counsel

cc:   Tom DePaso, Esq.
      Ezekiel Elliott
      Ned Ehrlich, Esq.
      Frank Salzano, Esq.
      Jeffrey Kessler, Esq.
      Jon Amoona, Esq.
      Rocky Arceneaux

# EXHIBIT B

NFL

## NATIONAL FOOTBALL LEAGUE

**Adolpho A. Birch III, Esq.**
*Senior Vice President of Labor Policy &
League Affairs*

**CONFIDENTIAL**

August 22, 2017

**VIA ELECTRONIC DELIVERY**

Heather M. McPhee, Esq.
Associate General Counsel
NFL PLAYERS ASSOCIATION
1133 20th Street, NW
Washington, DC  20036

> **Re:     Ezekiel Elliott Article 46 Appeal—Request for Documents and Witnesses**

Dear Heather:

I write in response to your August 18, 2017 letter.

**Request for the Production of Documents**

We object to the document requests because, contrary to your assertion, they are inconsistent with the express provisions in Article 46 of the CBA that govern this appeal. Article 46 does not provide for the type of discovery requests you have propounded, but rather provides only that "the parties shall exchange copies of any exhibits upon which they intend to rely no later than three (3) calendar days prior to the hearing." CBA, Art. 46, Sec. 2 (f)(ii).  As Judge Jones confirmed in the Ray Rice proceedings, this provision "does not contemplate the production of any other documents" beyond the documents to be relied on at the hearing.  *Article 46 Appeal of Ray Rice*, Decision on Discovery and Hearing Witnesses, at 1 (Oct. 22, 2014); *see also Article 46 Appeal of Tom Brady*, Decision on Hearing Witnesses and Discovery (June 22, 2015); *National Football League Management Council, et al v. National Football League Players Ass'n, et al* 820 F. 3d 527, 546 (2d Cir. 2016).

We further object on the grounds that the requests are overbroad, irrelevant, unduly burdensome, and also to the extent the requests seek information that is protected from disclosure by the attorney-client privilege or the work product doctrine.

As required by Article 46, we will provide all exhibits upon which we intend to rely no later than three days before the hearing.  Those exhibits will include the substantial material which has already been provided to Mr. Elliott's representatives,

**CONFIDENTIAL**

Ms. Heather McPhee
August 22, 2017
Page 2

including the Investigative Reports, the transcript of the June 26, 2017 meeting at the League office, and the materials submitted to us on Mr. Elliott's behalf.  As the August 11, 2017 letter to Mr. Elliott states, those are the documents upon which the Commissioner's disciplinary decision was based.

Subject to and without waiving these or any other objections, we respond to your specific requests as follows:

Request No. 1:

In addition to the materials previously provided to the NFLPA responsive to this request, and on a non-precedential basis as to any future Article 46 proceeding, attached are transcripts of the interviews of Ms. Thompson by League investigators that were recorded.  We will provide the actual recordings by separate cover.

We specifically object to your requests for other investigatory materials , including any "interview notes" of the investigators.  *See NFLMC v. NFLPA*, 820 F. 3d at 546-47 (affirming Article 46 Hearing Officer's denial of motion to compel interview notes of League investigators "because the CBA does not require the exchange of such notes . . . and there is simply no fundamental unfairness in affording the parties precisely what they agreed on").

Request No. 2:

We object to this request on the grounds that it is overbroad, irrelevant, unduly burdensome, and inconsistent with the specific provisions of Article 46 that governs this appeal.  *See also* objections above.

Request No. 3:

We object to this request on the grounds that it is overbroad, irrelevant, unduly burdensome, and inconsistent with the specific provisions of Article 46 that governs this appeal.  Moreover, there were no documents provided by any of the independent advisors to Commissioner Goodell reflecting their "advice and recommendations."

Request No. 4:

*See* objections above.

Request No. 5:

There are no transcripts or recordings of the interview with Mr. Tobias.  *See also* objections above.

CONFIDENTIAL

Ms. Heather McPhee
August 22, 2017
Page 3

Request No. 6:

There are no transcripts or recordings of the interviews with Ms. Glenn. *See also* objections above.

Request No. 7:

There are no transcripts or recordings of the interviews with Ms. Mason. *See also* objections above.

Request No. 8:

The NFLPA has been provided with the evidence upon which Mr. Elliott's discipline was based, which will also be included in our pre-hearing submission of exhibits pursuant to CBA Article 46.

**Requests for the Production of Witnesses**

We object to your requests for witnesses to the extent they are overbroad, irrelevant, inconsistent with the governing appeal procedures under Article 46, and to the extent that the requests seek information that is protected from disclosure by the attorney-client privilege or the work product doctrine. Subject to and without waiving these and any further objections as appropriate in the course of the hearing, we respond to your specific requests for witnesses as follows:

Tiffany Thompson:

We disagree that the NFL has an obligation to arrange for Ms. Thompson's attendance at the hearing, or that her live testimony at the hearing is "required by Article 46." To the contrary, your claim that Mr. Elliott has a right to subject the victim of domestic violence to such compulsory examination has no basis in the Policy. In fact, as you know, no such right has ever been asserted or recognized in any of the numerous such appeals that have been heard under the Policy.

Moreover, Mr. Elliott has been provided with the evidence that was presented to the Commissioner on this subject, and his representatives have had ample opportunity to argue and brief the issue of Ms. Thompson's credibility during the investigation. Indeed, virtually all of the evidence cited in support of those arguments was provided to Mr. Elliott by League investigators.

In any event, contrary to your suggestion, and unlike the prior examples you cite, the NFL has no ability to compel Ms. Thompson's attendance.

**CONFIDENTIAL**

Ms. Heather McPhee
August 22, 2017
Page 4

<u>Lisa Friel and Kia Roberts:</u>

Ms. Friel, who was the lead investigator in this matter, will be available to attend the hearing in order to respond to questions about the investigation and the reports.

We object to your request for testimony from Ms. Roberts on the ground that it would cumulative and unnecessary in light of Ms. Friel's attendance at the hearing.

<u>Dr. Lone Thanning and Dr. Lorraine Giordano:</u>

It is our position that Dr. Thanning and Dr. Giordano are not required to testify in an appeal under Article 46.  Mr. Elliott has been provided with their reports, which speak for themselves and which, in fact, have been relied upon extensively in the submissions made on Mr. Elliott's behalf.  However, without waiving this position with respect to future proceedings, we will inquire about their availability and attempt to coordinate their appearance at the hearing.

Please let me know if you have any questions or would like to discuss further.


Sincerely,


ADOLPHO A. BIRCH III

AAB: tgw

# EXHIBIT C

# PAUL TAGLIABUE

November 2, 2012

<u>In the Matter of New Orleans Saints Pay-for-Performance / "Bounty"</u>

## Pre-Hearing Order No. 1

Pursuant to my October 30, 2012, Notice and Agenda for Pre-Hearing Conference, we held a conference in Washington, DC on November 1, 2012 with counsel for all parties present.  As outlined at the hearing and after full consideration of the issues, I issue the following Order:

1.       Gregg Williams will be required to provide in-person testimony at a hearing before me in this matter and will be subject to reasonable cross-examination.  Other requested in-person testimony will be addressed at an early date.  Beveridge & Diamond, P.C. will coordinate with counsel for all parties as well as counsel for Mr. Williams to facilitate arrangements for Mr. Williams' testimony and to address possible arrangements for in-person testimony from Mike Cerullo.

2.       The parties will confer in an effort to narrow the several disputed document production issues identified at the conference.  They shall jointly submit to me a memorandum of no more than five pages describing any remaining disputes, and stating their respective positions on each disputed issue, by no later than 5:00 p.m. EST on Wednesday, November 7.

3.       The standard of review and burden of proof for an appeal under CBA Article 46 present important legal issues that I will address at an early date, before the commencement of the hearing and in-person testimony.

4.       As discussed at the conference yesterday, no hearing will be held on November 5 or November 6.  Unless otherwise directed, the hearing will commence on November 20, 2012 at a location to be determined.

 As discussed at the conference, I will issue my recusal decision by the end of the business day on Monday, November 5, 2012.


/s/Paul Tagliabue
_____
Paul Tagliabue

Cc:     All counsel
         Benjamin F. Wilson
         Harold Himmelman

# EXHIBIT D

PAUL TAGLIABUE

November 20, 2012

<u>In the Matter of New Orleans Saints Pay-for-Performance / "Bounty"</u>

**Notice to Counsel re Hearing Schedule**

To All Counsel:

Pursuant to my November 6, 2012 Pre-Hearing Order No. 2, I held a second pre-hearing conference, with counsel for all parties present, on Tuesday, November 20, 2012, at noon EST at the Washington, DC Offices of Beveridge & Diamond, P.C.  As discussed at the hearing and after further consideration of the issues, I issue the following Notice.

I expect to complete all hearings in these appeals by December 4, 2012, for the purpose of having a final decision shortly thereafter.  I expect to advise the parties of my final decision in summary form, and then issue a more detailed written explanation later.

I will hold a conference call with counsel for the parties on Monday, November 26, 2012, to advise of my decision with respect to the production of documents from the New Orleans Saints' personnel file for Mr. Cerullo.

The following schedule shall be followed, with appropriate counsel present.  Players are not required under the Collective Bargaining Agreement to attend an appeal hearing, unless testifying, but may attend any of these hearings as they wish.

The witnesses shall include:

- ➤ November 27, 2012, at 8:00 a.m.  – Jeff Miller in Washington, DC (Offices of Beveridge & Diamond, P.C.)
- ➤ November 29, 2012 – Mike Cerullo (same)
- ➤ November 30, 2012 – Gregg Williams (same)
- ➤ December 3, 2012 – Joe Vitt in New Orleans, Louisiana (location TBD)
- ➤ December 4, 2012 – Jonathan Vilma (same)

The NFL is responsible for producing Messrs. Miller, Cerullo, Williams, and Vitt; Mr. Ginsberg is responsible for producing Mr. Vilma.

Greg Aiello and Troy Vincent will also be present to testify on November 27, 2012 unless NFL and NFLPA counsel agree that other League employees are preferable to testify on the subjects proposed to be addressed with Messrs. Aiello and Vincent.  The NFL is responsible for producing these witnesses.

I will shortly advise counsel whether additional witnesses will be required to testify, as discussed in today's pre-hearing conference.

In light of the purpose of Article 46, supported by all parties and counsel, that this appeals process be resolved expeditiously, any exceptions to this schedule must be demonstrated by extraordinary circumstances.

Other issues of standard of review, burden of proof and document production will be addressed separately.

To insure the efficient implementation of the schedule, I have instructed my counsel to work directly with counsel for each party that is responsible for producing a witness to make arrangements for the required testimony.  It is impractical and unnecessary to involve other counsel in such routine ministerial actions.  My counsel shall have no obligation to include opposing party counsel in these efforts.  My counsel or I will advise all party counsel of any scheduling decisions or issues related thereto that warrant the involvement of counsel.

Based upon the discussion at today's pre-hearing conference, I have further instructed my counsel to commence private settlement discussions with the chief executives of the NFL and the NFLPA as well as with Mr. Vilma, including counsel for these parties, separately or jointly in the discretion of my counsel.  Such discussions should explore all avenues for the settlement of the disputes among the parties.  My counsel are available to start this process on Monday and Wednesday, November 26 and 28, 2012.

/s/ Paul Tagliabue
_____
Paul Tagliabue

Cc:    Benjamin F. Wilson
       Harold Himmelman

# EXHIBIT E


ZUCKERMAN SPAEDER LLP

1185 AVENUE OF THE AMERICAS  31ST FLOOR
NEW YORK, NY 10036-2603
212.704.9600  212.704.4256 fax  www.zuckerman.com

**In the Matter of Ray Rice**
Decision on Discovery and Hearing Witnesses
October 22, 2014

Following a meeting on June 16, 2014, National Football League ("NFL") Commissioner Roger Goodell suspended Baltimore Ravens running back Ray Rice for two games on July 23, 2014, for a February 15, 2014 incident in which he assaulted his then-fiancée, Janay Palmer. On September 8, 2014, a video of the assault was made public. Subsequently, on September 11, 2014, Commissioner Goodell suspended Mr. Rice indefinitely. Mr. Rice has brought this appeal seeking to have the second, indefinite suspension overturned. The parties have identified the primary factual issue as what Mr. Rice told the League about his assault of Ms. Palmer at the June 16 meeting. Against this factual background, at issue is whether Commissioner Goodell abused his discretion, or in other words, acted arbitrarily and capriciously, in suspending Mr. Rice indefinitely.

Document Requests:

Article 46 of the Collective Bargaining Agreement ("CBA") between the NFL and National Football League Players' Association ("NFLPA") identifies the procedures that govern appeals related to "action taken against a player by the Commissioner for conduct detrimental to the integrity of, or public confidence in, the game of professional football." Such an appeal is at issue here. The bargained-for procedures include "discovery" limited to the production of all documents that will be relied upon at the hearing at least three days prior to said hearing. NFL-NFLPA CBA, Art. 46 § 2(f)(ii). "Arbitrators are bound by the language of the contract, but equally important is they are restricted by what the language of the contract does not say." *Carrollton Bd. of Educ.*, 09-2 Lab. Arb. Awards (CCH) P 4632, at 8 (2009) (Allen, Arb.). Here, the collective bargaining agreement provides for tightly circumscribed discovery and does not contemplate the production of any other documents in an Article 46 proceeding other than under those terms.

That said, the NFL has already agreed to provide the NFLPA with the majority of their requested documents. I also find that the remaining NFLPA discovery requests are of tenuous relevance and in some instances a fishing expedition. The NFL has agreed to produce the requested documents in its possession aside from those responsive to portions of Document Request 8. The remaining scope of Request 8 seeks to comb through League files and e-mails based upon a single press report relying upon unnamed sources. The NFLPA does not need access to such documents in order to "present evidence and cross examine witnesses," the key elements of a "fundamentally fair hearing." *Kaplan v. Alfred Dunhill of London, Inc.*, No. 96 Civ. 0258 (JFK), 1996 WL 640901, at *5 (S.D.N.Y. Nov. 4, 1996).

The NFL has also agreed to provide relevant documents within its possession that were provided to it by the Ravens. Because the issues as identified by both of the parties center on the knowledge of the League, not that of the Club, documents held independently by the Ravens are

 **ZUCKERMAN SPAEDER** LLP

not sufficiently relevant to this matter, and they need not be produced in order to ensure a fair hearing. As such, no further document production by the NFL or by the Ravens will be ordered.

The NFL is encouraged to produce these documents as soon as practicable, but they shall be produced no later than the close of business on Thursday, October 30, 2014. All parties are directed to produce the exhibits they will rely upon at the hearing no later than the close of business on Thursday, October 30, 2014, in conformity with the three-day timeframe provided for by Art. 46 § 2(f)(ii).

Witnesses:

While Article 46 of the CBA clearly identifies the scope of document discovery, it is silent on the scope of witness testimony at appeals hearings under the Article. Art. 46 § 2. As the player is plainly entitled to such a hearing upon request, it must be within the discretion of the hearing officer to determine the scope of the presentations, including compelling the witnesses necessary for the hearing to be fair.

As noted, both sides have cast as a central issue in the case what Mr. Rice said in the meeting with the League and Ravens officials on June 16, 2014. The NFL has already agreed to produce Adolpho Birch and Kevin Manara, two NFL lawyers who were present at that meeting. To limit the available witnesses knowledgeable about the content of that meeting to the individuals the NFL is willing to produce would prevent Mr. Rice from presenting his case and runs the risk of providing an incomplete picture of the content of a meeting that both parties have identified as critical. As such, all individuals present at the June 16, 2014 meeting between Mr. Rice and the League, including Commissioner Roger Goodell, Ravens General Manager Ozzie Newsome, and Ravens President Dick Cass are directed to be available to testify before the Hearing Officer at the hearing currently scheduled for November 5 and 6, 2014.[1] The NFL has also agreed to produce Chief Security Officer Jeffrey Miller.

The NFLPA has also sought the testimony of Ravens owner Steve Bisciotti, Ravens Head Coach John Harbaugh, and Ravens Senior Director of Security Darren Sanders. The request for production of these witnesses is denied. The NFLPA has not demonstrated that their testimony is necessary for Mr. Rice to present his case regarding the League investigation and discipline imposed by the Commissioner. Through the course of the hearing, should the parties present evidence that the presence of such witnesses is necessary for a full and fair hearing, the Hearing Officer will revisit the request.

SO ORDERED:

_____
Hon. Barbara S. Jones (ret.)

---

[1] The NFLPA has indicated that it "believes" each of these individuals was in attendance at the June 16, 2014 meeting. If, in fact, any one of these individuals was not present, the parties should make a submission to the Hearing Officer forthwith so that this order may be reassessed.

# EXHIBIT F

**NFL**

NATIONAL FOOTBALL LEAGUE

**B. Todd Jones**
*Senior Vice President*
*Special Counsel, Conduct*

**CONFIDENTIAL**

August 11, 2017

**Via Electronic Delivery**
Mr. Ezekiel E. Elliott
c/o Ned Ehrlich, Esq. and Heather McPhee, Esq.
NFL Players Association
1133 20th Street, NW
Washington, DC 20036

Dear Mr. Elliott:

Pursuant to Article 46 of the Collective Bargaining Agreement, this will set forth Commissioner Goodell's disciplinary decision in connection with your actions between July 17 and July 21, 2016, and separately on March 11, 2017.

## BACKGROUND

In late July of 2016, public sources reported that during the week of July 16, 2016, you were allegedly involved in multiple instances of physical violence against Ms. Tiffany Thompson in Columbus, Ohio. At the time you and Ms. Thompson were in an intimate relationship and spent considerable time together, including at your residence in Columbus. On July 22, 2016, Ms. Thompson reported these incidents to the Columbus Police Department, which initiated an investigation. There was no arrest made and ultimately a decision not to pursue a criminal prosecution was publicly announced by the Columbus City Attorney's office on September 6, 2016.

The League also learned through public sources that on March 11, 2017, while watching a St. Patrick's Day parade in Dallas, Texas from the balcony of a local restaurant, you pulled down the shirt of a young woman, exposing and touching her breast. This incident was captured on video and posted on social media. Again, no arrest was made nor was a complaint filed by the young woman.

Mr. Ezekiel E. Elliott
Page 2

Each of these incidents involved allegations of conduct that is expressly prohibited by the League's Personal Conduct Policy, including "[a]ctual or threatened physical violence against another person." Even when a player is not charged with a crime, "he may still be found to have violated the policy if the credible evidence establishes that he engaged in conduct prohibited by this Personal Conduct Policy." As the Policy states, "[i]t is not enough simply to avoid being found guilty of a crime. We are all held to a higher standard and must conduct ourselves in a way that is responsible, promotes the values of the NFL, and is lawful."

Consequently, the League undertook an extensive investigation of the allegations. With respect to the incidents during the week of July 16, 2016, League investigators interviewed more than a dozen witnesses, including Ms. Thompson, and examined all available evidence, including photographic and digital evidence, thousands of text messages and other records of electronic communications. In addition, two medical experts were consulted regarding identification, causation and aging of certain injuries to Ms. Thompson as depicted in the relevant photos and provided written reports that were shared with your representatives.

With respect to the March 11, 2017 incident, League investigators reviewed the available video evidence and interviewed the woman whose shirt you pulled down.

On June 7, 2017, we provided you and your representatives copies of our Investigative Reports on both the Columbus and Dallas matters for your review and comment. Copies of the expert medical reports were provided to you on July 6, 2017.

The Policy states that in evaluating any potential violation, expert and independent advisors may be consulted by the Commissioner as needed. Such advisors may include former players and others with appropriate backgrounds and experience in law enforcement, academia, judicial and public service, mental health, and persons with other specialized subject matter expertise. In this instance, four such individuals of varying, relevant backgrounds were asked to provide the Commissioner with their perspective and expertise on a number of issues, including the assessment of the various evidentiary issues and evaluation of the statements and behavior of the parties involved:

- Mr. Peter Harvey, Esq., former Attorney General for the State of New Jersey;
- Mr. Kenneth Houston, former player and member of the Pro Football Hall of Fame;
- Ms. Tonya Lovelace, CEO of the Women of Color Network, Inc.; and
- Ms. Mary Jo White, Esq., Former United States Attorney and former Chair of the Securities and Exchange Commission.

On June 26, 2017, you and your representatives had an opportunity to meet personally with these independent advisors to discuss your recollection of the events of the week of July 16, 2016, your relationship with Ms. Thompson, the March, 2017 incident, and other issues you and your representatives believed were pertinent to our review. The advisors had an opportunity to

Mr. Ezekiel E. Elliott
Page 3

engage directly in discussions with you, and to hear your counsel's assessment of the legal, evidentiary and credibility issues presented in this case. A transcript of that meeting was made and shared with your representatives that same week. On July 7 and July 17, 2017, your representatives provided both the independent advisors and our office with written submissions (accompanied by detailed supporting materials) that addressed the issues discussed at this meeting and in the Investigative Reports.

The Commissioner has now had the opportunity to review the record, including the Investigative Reports, the transcript of the June 26, 2017 meeting, and the materials submitted on your behalf. He also consulted separately with each of the independent advisors concerning the evidence and the points made by your representatives in their oral and written submissions. In that respect, the advisors individually were of the view that there is substantial and persuasive evidence supporting a finding that you engaged in physical violence against Ms. Thompson on multiple occasions during the week of July 16, 2016. The Commissioner has considered those views in the context of his evaluation of the record and the advice and recommendations of the advisors have helped to inform his findings and conclusions, which are set forth below.

**FINDINGS**

a. Columbus, Ohio Incidents

Based on the entire record, the credible evidence establishes that on multiple occasions during the week of July 16, 2016, you used physical force against Ms. Thompson resulting in her injury, specifically as follows:

- During the early morning hours of July 17, 2016, there was an altercation at the Canvasback Lane apartment in Columbus, Ohio in which you used physical force that caused injuries to Ms. Thompson's arms, neck and shoulders. These injuries are portrayed in several photographs (3 series) confirmed by forensic analysis to have been taken by Ms. Thompson the following day and subsequently sent to her aunt with a text message stating "Absuive" [sic]. Several of these injuries are also portrayed in photographs taken by the Columbus Police Department on July 22, 2016 (7 series). Some of these injuries are also depicted in photographs provided by the Thompson family to the Columbus City Attorney's office on July 22, 2016 (8 series). Collectively, a review of these photographs by both medical experts determined that the injuries to her arms, neck and shoulders appear recent and consistent with Ms. Thompson's description of the incident and how they occurred.

- On the morning of July 19, 2016, there was an altercation at the Canvasback Lane apartment in which you used physical force that caused injuries to Ms. Thompson's face, arms, wrist and hands. These injuries are portrayed in photographs (6 series) confirmed by forensic analysis to have been taken by Ms. Thompson on the afternoon of July 21,

Mr. Ezekiel E. Elliott
Page 4

2016 and concurrently sent via text message to her mother. These injuries are also portrayed in the photographs taken by the Columbus Police Department on July 22, 2016 (7 series). A review of these photographs by both medical experts determined that the injuries displayed appear recent and consistent with Ms. Thompson's description of the incident and how they occurred.

- During the early morning hours of July 21, 2016, there was an altercation at the Canvasback Lane apartment in which you used physical forced that caused injuries to Ms. Thompson's face, neck, arms, knee and hips. Ms. Ayrin Mason stated in her interview that she observed these injuries to Ms. Thompson later that same day. These injuries are portrayed in a photograph taken by Ms. Thompson the afternoon of July 21, 2016 (6C), and in photographs provided by the Thompson family to the Columbus City Attorney's office on July 22, 2016 (8 and 10 series), or taken by that office on the same date (9 series). A review of these photographs by both medical experts determined that the injuries displayed appear recent and consistent with Ms. Thompson's description of the incident and how they occurred.

In the course of the investigation and during the meeting with the independent advisors, you and your representatives raised multiple issues regarding the complaining witness, which deserved and received careful consideration by the Commissioner. In order to address those issues appropriately, no finding, and no disciplinary action, was based simply on one individual's statements. Rather, the findings set forth above are based on a combination of photographic, medical, testimonial and other evidence that is sufficiently credible in the Commissioner's judgment to establish the facts, even allowing for concerns you and your representatives have advanced about the complaining witness's credibility. As discussed earlier, his judgment in this respect is informed in part by the independent advisors. It is also informed by the views of the Columbus city prosecutor who handled the investigation. The city prosecutor has stated both publicly and to our investigator that after interviewing Ms. Thompson several times "[w]e never concluded that she was lying to us." He also said that, "we generally believed her for all of the incidents."

Irrespective of the characterization of Ms. Thompson's statements to law enforcement and investigators regarding the incidents identified above, the photographic and medical forensic evidence corroborates many critical elements of the allegations regarding the causes of her injuries. It is also important to note that, while there may be conflicting testimonial evidence regarding the nature and substance of conversations, there is no dispute that you and Ms. Thompson were together in the same location on the dates identified, and no evidence to suggest that anyone else could have caused these injuries.

Thus, the Commissioner carefully considered the issues raised by the NFLPA on your behalf regarding witness credibility and alternative causation theories. However, in the Commissioner's judgment, there has been no persuasive evidence presented on your behalf with

Mr. Ezekiel E. Elliott
Page 5

respect to how Ms. Thompson's obvious injuries were incurred other than conjecture based on the presence of some of her bruising which pre-dates your arrival in Columbus on July, 16, 2016.

    b.  <u>St. Patrick's Day Incident and Cooperation with the Investigation</u>

        The Commissioner also has determined that the March 11, 2017, St. Patrick's Day parade incident in Dallas will not be considered separately as a basis for additional discipline under the Policy given the circumstances surrounding the incident. You should understand, however, that your behavior during this event was inappropriate and disturbing, and reflected a lack of respect for women. When viewed together with the July incidents, it suggests a pattern of poor judgment and behavior for which effective intervention is necessary for your personal and professional welfare.

        Finally, while there are some questions with respect to the completeness of your cooperation with the investigation, the Commissioner has not found a violation of the Policy based on your lack of cooperation and no discipline will be imposed on that basis.

## DECISION

        With respect to discipline for violations that involve physical force against a woman in the context of an intimate relationship, the Policy is clear – a first violation subjects the violator to a baseline suspension without pay of six games, with consideration given to any aggravating or mitigating factors. After reviewing the record, and having considered the advice of the independent advisors on this point, the Commissioner has determined that the evidence does not support finding either mitigating or aggravating factors.

        Accordingly, the Commissioner has determined the following:

1.     You are hereby suspended without pay for six (6) regular-season games, subject to appeal.

2.     You must have no further adverse involvement with law enforcement, and must not commit any additional violations of league policies. In that respect, you should understand that another violation of this nature may result in your suspension or potential banishment from the NFL.

        Additionally, you are directed to engage a qualified professional, in consultation with the League and your current club, to arrange a clinical evaluation. Should counseling or treatment be recommended, you will be expected to comply with those recommendations. You also will provide contact information and any necessary releases to allow our office to monitor your compliance with the evaluation and any follow-up care, including meetings with you and any treating clinicians as appropriate. These steps are intended to assist you in addressing

Mr. Ezekiel E. Elliott
Page 6

proactively the issues revealed during the course of this investigation. While this is a serious matter, it by no means suggests a belief that you cannot have a long and productive career in the NFL. You will have substantial resources available to you from your club, and from our office, to assist you in learning how to make better decisions and avoid problematic situations. Our goal is for you to have as successful a career as possible. If you genuinely learn from this incident, and commit yourself to continued personal development, there is every reason to be optimistic about your future in and beyond the NFL.

If you wish to appeal this decision, you must notify Adolpho Birch of our office at NFLMCPolicy@NFL.com within three days of receiving this letter. If you do so, a hearing will be scheduled promptly at which either the Commissioner or his designee will preside.

Sincerely,

B. TODD JONES

cc:     Commissioner Goodell
        Jerry Jones
        Adolpho Birch