IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own Behalf and on behalf of EZEKIEL ELLIOTT, | § § § § § | |
| Petitioner, | § § | |
| v. | § § | No. 4:17-CV-00615-ALM |
| NATIONAL FOOTBALL LEAGUE and NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, | § § § § § | |
| Respondents. | § | |

## RESPONDENTS' SUPPLEMENTAL BRIEF

Just as a party cannot appeal a verdict while the jury is deliberating, it cannot petition to "vacate" an arbitration decision that has not yet issued. Binding Supreme Court and Fifth Circuit authority could not be clearer: Until a "grievance award *** [is] final and binding under the collective bargaining agreement, *no action under § 301 [of the LMRA] *** will lie*." *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 520 (1963); *see Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000) ("Federal courts *lack jurisdiction*" under the LMRA "unless the employee has exhausted contractual procedures for redress."). This Court indisputably lacked power to grant Petitioner any relief at the time the suit was filed.

That the Arbitrator's award issued five days later does not (and could not) change that ineluctable conclusion. *See* Exhibit A to the Declaration of Daniel L. Nash ("Nash Decl.") (the "Award"). Because a party cannot "create jurisdiction retroactively where it did not previously exist," *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011), any

1

relief this Court awarded now would be void and subject to immediate reversal by the Fifth Circuit. Although the NFLPA may attempt to file a *new* suit now that the Award has been issued, the Court lacks jurisdiction over this one.

The fundamental jurisdictional defect in the NFLPA's suit is no mere technicality. Federal courts observe the "first filing" rule, under which the second court having jurisdiction over a controversy will defer to the first court with jurisdiction. Last night, *after* the award was issued, the NFL properly filed a petition to confirm in the Southern District of New York (the "New York Action")—the place where Elliott's suspension was handed down and where the Arbitration hearing took place. (*See* Nash Decl. Ex. B.) Unless this Court dismisses, the NFLPA will undoubtedly argue that this action, rather than the New York Action, is the "first filed" suit. The NFLPA should not be permitted to thumb its nose at basic jurisdictional precepts in order to manipulate first-filed status. Instead, the Southern District of New York, as the only court with jurisdiction to consider the NFLPA's arguments—and the only court in which any party has sought review of the actual, rather than a hypothetical, "forthcoming" Award—can and should adjudicate this dispute. This Court should deny the pending Motion for Temporary Restraining Order and dismiss the Petition to Vacate.

## ARGUMENT

I. **THIS COURT MUST DISMISS THE NFLPA'S PREMATURE SUIT**

    A. **The Issuance Of The Award Does Not Change The Fact That This Court Cannot Grant Petitioner Any Relief**

        1. *Post-Filing Events Do Not Confer Jurisdiction Or Standing Where It Was Previously Lacking*

Because both jurisdiction and standing must be established at the time a suit is filed, Fifth Circuit precedent is clear that plaintiffs "cannot rely on events that unfolded after the filing of the

complaint to establish its standing" or a court's subject-matter jurisdiction. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005); *McKesson*, 649 F.3d at 328 (plaintiff cannot through amendment or otherwise "create jurisdiction retroactively where it did not previously exist"); *see also* Mot. to Dismiss at 9-10 (citing additional authority for proposition that jurisdiction, where initially lacking, does not materialize later due to subsequent events).

Thus, the fact that the Award issued five days after Petitioner filed suit is irrelevant to whether this Court can adjudicate Petitioner's lawsuit. This Court lacks jurisdiction today if it lacked jurisdiction last Thursday. And as explained below, this Court has lacked jurisdiction from this suit's commencement.

        2.    *Federal Courts Lack Authority Under The LMRA To Review Non-Final Arbitration Awards*

The NFLPA concedes that, unless the LMRA confers authority to review a "forthcoming" Arbitration Award, this Court lacks subject-matter jurisdiction. NFLPA Reply at 1 ("[T]he LMRA—not the FAA—supplies the jurisdictional basis for this case."). But the Supreme Court has squarely held that until a "grievance award *** [is] final and binding under the collective bargaining agreement, *no action under § 301 [of the LMRA] to enforce it will lie*." *Gen. Drivers, Warehousemen & Helpers*, 372 U.S. at 520. Put differently, until a petitioner has "fully exhausted" grievance procedures by obtaining a final arbitration award, a petitioner may not "resort[] to the courts." *Vaca v. Sipes*, 386 U.S. 171, 184-85 (1967).

Fifth Circuit authority is fully in accord: "Federal courts *lack jurisdiction* to decide cases alleging violations of a collective bargaining agreement under the Labor Management Relations Act by an employee against his employer unless the employee has exhausted contractual procedures for redress." *La. Fed'n of Teachers*, 209 F.3d at 402 (emphasis added) (citation omitted); *see also Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432, 445 (5th Cir. 2010)

("Espinoza's suit is barred because she failed to exhaust the [CBA's] Claims Procedure."); *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996) ("Because Richter did not exhaust his remedies under the CBA, he is therefore precluded from bringing suit."); *Baker v. Farmers Elec. Co-op, Inc.*, 34 F.3d 274, 284-85 (5th Cir. 1994) ("It is clear that Baker's claims were properly dismissed for failure to exhaust the grievance procedures in the CBA.").

Indeed, courts across the country have found that, until an arbitration award is "final and binding," a federal court may not review it under Section 301. *See, e.g., Local 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949-50 (8th Cir. 1992) ("federal jurisdiction" under LMRA not "proper" if "arbitration was not complete"); *Millmen Local 550, United Bhd. of Carpenters & Joiners of Am. v. Wells Exterior Trim*, 828 F.2d 1373, 1374 (9th Cir. 1987) (dismissing review of LMRA Award for lack of jurisdiction where there was no "final and binding award under section 301" at the time party filed suit); *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 614 (3d Cir. 1990) ("[T]he opinions in this case should alert the bench and bar to the necessity for an arbitration to be complete before a section 301 action is entertained so that a premature action will be discouraged or, if brought, will be met with a motion to dismiss."); *see also Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc.*, 928 F. Supp. 83, 86 (D. Mass. 1996) ("As a general matter, federal courts decline to review an arbitrator's decision under section 301 of the LMRA until the award is final.") (citing cases).

The NFLPA admits that the "forthcoming" Award was not "final and binding" at the time it filed suit under Section 301. *See* NFLPA Reply at 3 (acknowledging that, as of the time it filed suit, "Arbitrator Henderson could theoretically vacate the discipline"). At the hearing, the

4

NFLPA contended that it could immediately challenge certain evidentiary rulings of the Arbitrator. But those interim rulings are plainly not "final" within the meaning of the LMRA. In fact, the NFLPA does not seek to vacate those evidentiary rulings. Nor could it: The only order subject to vacatur under the LMRA is the Arbitrator's "final" Award. *See Millmen Local 550,* 828 F.2d at 1376 ("By analogy to the 'final judgment' rule of section 1291," before an arbitration Award is "final," its rulings are not "reviewable under section 301" of the LMRA.). This Court therefore lacks jurisdiction to grant the NFLPA any relief.

The NFLPA contends that a petitioner is free to file suit over a "forthcoming" Award so long as it "attempts" to exhaust its administrative remedies. NFLPA Reply at 2. That is nonsense. This is not a situation where exhaustion can be excused because the NFLPA refused to file a grievance on an employee's behalf, or the Arbitrator refused to hear it. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (although an employee must ordinarily "exhaust any grievance or arbitration remedies provided in the collective bargaining agreement," "we recognize[] that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation"). The NFLPA here initiated the arbitration process and then simply filed suit prematurely, before seeing arbitration through to its proper conclusion. But it is "[t]he Arbitrator's imposition of an award [that] represents the point at which [petitioner's] administrative remedies have been exhausted"—not before. *Mamouzette v. Jerome*, No. 2013-0117, 2017 WL 3083628, at *15 (D.V.I. July 19, 2017).

The NFLPA cannot cite a single case where a party was permitted to file a lawsuit under Section 301 concerning a dispute that was submitted to arbitration, but before the arbitrator

5

rendered a decision. This Court should not be the first one to do so. "To allow judicial intervention prior to the final award would contravene the fundamental federal labor policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings." *Millmen Local 550*, 828 F.2d at 1376.

### 3. The NFLPA Also Lacked Standing To Seek Vacatur Of An Award That Had Not Yet Issued

Like statutory jurisdiction, a party must demonstrate Article III standing at the "commencement of the litigation," *Davis v. FEC*, 554 U.S. 724, 732 (2008), and the absence of constitutional standing cannot be cured through subsequent pleadings or procedures, *see, e.g.*, *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 595 (5th Cir. 2016) (explaining that in *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981), district court correctly disallowed an amendment to the complaint that would have cured a standing defect and dismissed case "because jurisdiction was lacking over the entire case from its inception"). Here, it is clear that at the time the NFLPA brought suit seeking (as sole relief) vacatur of the "Award," Pet. ¶ 86, a ruling from this Court could not have redressed any actual injury caused by the "Award" because, as the NFLPA tellingly states, the "Award" was by definition a "*forthcoming* Arbitration Award ('Award')," Pet. at 1 (emphasis added).

In an effort to avoid that conclusion, the NFLPA has argued that it had standing to "vacate" something that did not exist because its injury was "imminent." NFLPA Reply at 2. But the concept of "imminent" injury does not encompass the NFLPA's claim. As the Supreme Court has recently underscored, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury

6

is *certainly* impending. Thus, we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (first alteration in original) (citations and internal quotation marks omitted). Given the NFLPA's position in the underlying arbitration that the suspension *must* be overturned for myriad reasons, it cannot be the case that affirmance of the suspension was "certainly impending," rather than merely "possible," at the commencement of litigation.

The NFLPA's "expect[ation]" that the Award would "deny[] Elliott and the NFLPA's disciplinary appeal," NFLPA Mot. at 1, is of no moment. The Supreme Court has expressly "declined to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." 568 U.S. at 413; *see id.* at 414 n.5 ("Plaintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the court.") (citations and internal quotation marks omitted). Indeed, the Court in *Whitmore v. Arkansas* held that because "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case," "no amount of evidence" could establish a plaintiff's standing. 495 U.S. 149, 159-60 (1990). To hold here that the NFLPA had standing at the outset of this suit based on sheer speculation about the substance of the forthcoming Award—an Award that the NFLPA conceded might have still granted full relief and thus cause no injury at all—would run headlong into that settled law.

  **B.  The Only Proper Forum To Adjudicate This Dispute Is The Southern District Of New York**

The jurisdictional defect in the NFLPA's suit is no mere technicality. That is because the proper forum to review the Award issued by the Arbitrator is the United States District Court for the Southern District of New York, where the NFL Management Council filed an action to

confirm yesterday *after the Award actually issued*. (*See* Nash Decl. Ex. B.) The NFLPA has not filed a new lawsuit in this Court to vacate or enjoin the Arbitrator's Award, and neither the NFLPA's existing Petition nor its application for injunctive relief seeks review of the *actual* Award (versus the "forthcoming" one). Thus, the New York Action is properly considered the "first filed" action, and this Court should dismiss this suit so that the parties can adjudicate this dispute in the only court with subject-matter jurisdiction.

In the alternative, this Court may simply transfer the matter to the Southern District of New York. The NFLPA has successfully sought in the past to transfer a "first-filed" action to the Southern District of New York on the ground that it was appropriate to transfer to the forum where the arbitration took place and the award was issued. *See Johnson v. National Football League Players Ass'n*, 2017 WL 2882119, Case No. 5:17-CV-0047 (N.D. Ohio July 6, 2017). Consistent with that ruling, courts "have generally found that the interests of justice and the convenience of all involved are best served by having the action heard in the forum where the arbitration took place." *Crow Const. Co. v. Jeffrey M. Brown Assocs., Inc.*, No. 01 CIV. 3839 (AGS), 2001WL 1006721, at *2 (S.D.N.Y. Aug. 31, 2001) (collecting cases). And that is true in suits involving discipline under the parties' CBA, as well. *See, e.g., Nat'l Football League Players Ass'n v. Nat'l Football League*, Civ. No. 15-3168 (RHK/HB), 2015 WL 7596934, at *2 (D. Minn. July 30, 2015) (transferring case involving NFL player suspension appeal to the Southern District of New York where the arbitration proceedings took place and the award was issued in New York).[1]

---

[1] *See also, e.g., Esso Expl. & Prod. Chad, Inc. v. Taylors Int'l Serv. Ltd.*, No. H-04-2483, 2006 WL 1544516, at *3 (S.D. Tex. June 1, 2006) (finding that because the arbitration was conducted in New York, the private interest factors weighed in favor of a transfer to the Southern District of New York, and also that the public concerns weighed in favor of transfer because the

Transferring would be particularly appropriate here because Petitioner's anticipatory suit would have no basis to claim first-filed status even if this Court *had* jurisdiction. Anticipatory suits involve actions "brought in one forum in anticipation of the opposing party bringing suit in another, less favorable forum." *Serv. Corp. Int'l v. Loewen Grp. Inc.*, Civil Action No. H-96-3269, 1996 WL 756808, at *2 (S.D. Tex. Nov. 29, 1996); *see also Platt v. Nash*, 2016 WL 6037856, at *2 (E.D. Tex. Oct. 14, 2016) ("The first-to-file rule does not apply where the first suit is brought in anticipation of the second suit."). Such actions "are disfavored because they are an aspect of forum-shopping." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983). Where a case is found to have been "designed to preempt the [second-filer's] suit and to secure the [first-filer's] own choice of forum instead," it is proper for the court where the anticipatory suit was filed to "yield" to the other forum. *Raz Imports, Inc. v. Luminara Worldwide, LLC*, No. 3:15-cv-02223-M, 2015 WL 6692107, at *3 (N.D. Tex. Nov. 3, 2015) (granting transfer of venue based on anticipatory suit and public and private interest factors). As the true first-filed action regarding the actual Award, the Southern District of New York is the proper court to resolve the parties' dispute. *See Emp'rs Ins. of Wausau v. Fox Entm't Grp.*, 522 F.3d 271, 275 (2d Cir. 2008) (courts need not defer to anticipatory filing involving "manipulative or deceptive behavior").

## II. THE AWARD SIMPLY CONFIRMS THAT PETITIONER CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS

The Arbitrator's Award also confirms that the NFLPA cannot establish any likelihood of success on the merits. The Arbitrator considered the NFLPA's arguments, including the very

---

Southern District of New York has greater familiarity and experience in dealing with whether the law was correctly applied by the arbitrator); see also *Drill Cutting Disposal Co. v. Gutierrez*, No. 15-cv-2532, 2016 WL 4541598, at *7 (W.D. La. Aug. 26, 2016) (transferring case to the Western District of Texas due largely to the arbitration proceedings being located in San Antonio, as "any evidence as to those proceedings is likely to be most easily accessible there").

9

evidentiary and procedural issues the NFLPA raises in this proceeding, yet found that the Commissioner acted within his authority in imposing the discipline. That decision cannot be second guessed here. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (federal district courts "'have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'") (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987)); *United Steel v. Delek Ref., Ltd.*, 575 F. App'x 330, 333 (5th Cir. 2014) (as long as the "arbitrator acted within the ambit of his authority" in issuing an award, then "the arbitrator's construction and award must be affirmed no matter how 'good, bad, or ugly.'") (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2071 (2013)).[2]

*First*, the Arbitrator considered the NFLPA's arguments that the discipline could not be upheld because Kia Roberts' concerns regarding Tiffany Thompson's credibility were concealed from the Commissioner. *See* Award at 6. The Arbitrator rejected this contention, finding that "all the statements and inconsistencies [identified by Roberts] are included in the investigative report and other materials provided to the Commissioner for his review," and thus did not provide a basis to overturn the discipline. (*Id.* at 8.) Courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."

---

[2] The reason for this deference is clear. The typical at-will employee has no ability to litigate any discipline against him. *See, e.g.*, *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 197 (Tx. Ct. App. 2011) (company's human resources manual did not create contract entitling at-will employee to certain procedures before termination). The right to make such a challenge only arises if the employee and employer have agreed to such a process. *See, e.g.*, *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1201 (5th Cir. 1987) (contract contained "specific limiting disciplinary procedural requirements which obviate the application of the Texas 'at-will' doctrine"). Consequently, an employee may not demand more than the contract provides. *See, e.g., NFLMC v. NFLPA,* 820 F.3d 527, 547 (2d Cir. 2016) ("*Brady*") ("Had the parties wished to allow for more expansive discovery, they could have bargained for that right. They did not, and there is simply no fundamental unfairness in affording the parties precisely what they agreed on.").

*Misco*, 484 U.S. at 38. As a result, an arbitration award must be upheld even if the court is convinced that the arbitrator committed "serious error." *Id.* at 39 ("improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award).

*Second*, the Arbitrator construed Article 46 of the parties' collective bargaining agreement and the Personal Conduct Policy promulgated pursuant to that Article in finding that the investigative process leading to Elliott's discipline "fit squarely in the process outlined in the revised Policy":

> That process reserves the determination on discipline to the Commissioner by separating the functions; the disciplinary officer will provide a report on the investigation and also a disciplinary recommendation for the Commissioner's consideration "if desired."

(*Id.* at 6.) In reaching that conclusion, the Arbitrator unquestionably "constru[ed]" and "appl[ied]" the parties' contract and acted "within the scope of his authority." *Misco*, 484 U.S. at 38.[3]

The NFLPA's contention that the Award should nonetheless be overturned based on "fundamental fairness" grounds falls flat. Indeed, as other circuits have explained, fundamental fairness is not an independent ground for vacating an award under the LMRA; instead, as long as an award draws its essence from the parties' agreement, an arbitrator's decision may not be vacated. *See, e.g., National Football League Players Ass'n ex rel. Peterson v. National Football*

---

[3] The same principles apply to the Arbitrator's conclusion not to compel Tiffany Thompson or the Commissioner to testify. *See, e.g., Brady,* 820 F.3d at 545 ("It is well-settled that procedural questions that arise during arbitration, such as which witnesses to hear and which evidence to receive and exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by courts") (citing *Misco,* 484 U.S. at 40). The Arbitrator's decision on these issues also was based upon his interpretation of what was required under the parties' collectively bargained process. *See* ECF #1-59 at 1-2 ("I am not persuaded that under the provisions of Article 46 the NFL is required to produce Ms. Thompson for testimony at the hearing."); ECF #2-13 (Hearing Tr. Day 2) at 330-36, 348-49.

*League,* 831 F.3d 985, 999 (8th Cir. 2016) ("We have never suggested that when an award draws its essence from the collective bargaining agreement, a dissatisfied party nonetheless may achieve vacatur of the arbitrator's decision by showing that the result is 'fundamentally unfair'"); *Lippert Tile Co., Inc. v. Int'l Union of Bricklayers,* 724 F.3d 939, 948 (7th Cir. 2013) ("[LMRA] review simply does not include a free-floating procedural fairness standard absent a showing that some provision of the CBA was violated"). The NFLPA's submission does not include a single case (from this Circuit or elsewhere) holding that a labor arbitrator's procedural rulings or substantive award may be vacated as "fundamentally unfair" when the arbitrator was "arguably construing or applying [a collectively-bargained] contract and acting within the scope of his authority" when making these decisions. *Misco,* 484 U.S. at 38. Holding otherwise would overturn nearly 60 years of established Supreme Court precedent. The NFLPA fails to identify any case in which an arbitration award issued under Article 46 of the CBA (or its predecessor provisions) was overturned on these grounds.

As the Second Circuit held in *Brady,* the applicable statutory and Supreme Court authority holds:

> Our role is not to determine for ourselves whether Brady participated in a scheme to deflate footballs or whether the suspension imposed by the Commissioner should have been for three games or five games or none at all. Nor is it our role to second-guess the arbitrator's procedural rulings. Our obligation is limited to determining whether the arbitration proceedings and award met the minimum legal standards established by the [LMRA]. We must simply ensure that the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority" and did not "ignore the plain language of the contract." These standards do not require perfection in arbitration awards. Rather, they dictate that even if an arbitrator makes mistakes of fact or law, we may not disturb the award so long as he acted within the bounds of his bargained-for authority.

*Brady*, 820 F.3d at 532 (quoting *Misco,* 484 U.S. at 38). Because the Award shows that the Arbitrator unquestionably was doing so here, the NFLPA has no chance of overturning it. The Award accordingly confirms that it has no likelihood of success on the merits of its petition.

## CONCLUSION

For the foregoing reasons, and those stated in Respondents' other briefs, Petitioner's Motion for Temporary Restraining Order should be denied and the Petition to Vacate should be dismissed. Alternatively, the Court should transfer this action to the United States District Court for the Southern District of New York.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

 */s/ Eric Gambrell*
Eric Gambrell
egambrell@akingump.com
Texas Bar No. 00790735
*Lead Attorney*
Patrick G. O'Brien
pobrien@akingump.com
Texas Bar No. 24046541
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Daniel L. Nash
*Pro hac vice*
dnash@akingump.com
Nathan J. Oleson
*Pro hac vice*
noleson@akingump.com
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys For Respondents*
*National Football League And*
*National Football League Management*
*Council*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of September, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record in this case who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Patrick G. O'Brien