IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of EZEKIEL ELLIOTT, § § § § | | |
| Petitioner, § | CASE NO. 4:17-cv-00615 | |
| v. § § | | |
| NATIONAL FOOTBALL LEAGUE and NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, § § § § | SUPPLEMENTAL BRIEF IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION | |
| Respondents. | | |

Petitioner National Football League Players Association ("NFLPA" or "Union"), on its own behalf and on behalf of Dallas Cowboys Running Back Ezekiel Elliott, hereby submits this Supplemental Brief in Support of Petitioners' Emergency Motion for Temporary Restraining Order or Preliminary Injunction (Doc. No. 5). As the Court requested (*see* Doc. No. 14), this submission addresses the arbitration award issued by Harold Henderson on September 5, 2017, and signed on September 6, 2017 (the "Award").[1]

## PRELIMINARY STATEMENT

The Award does not change anything about the evidence of fundamental unfairness, irreparable harm, or balance of hardships set forth in the TRO Motion (Doc. No. 5) or the Petition (Doc. No. 1). It simply reflects the inevitable outcome of arbitral proceedings in which the arbitrator had already rendered final rulings denying Petitioners access to the witnesses and

---

[1] The Award is attached to the September 6, 2017 Declaration of Jeffrey L. Kessler, submitted herewith.

1

evidence they needed to meet their burden of challenging whether there was "credible evidence" to justify the Commissioner's discipline.

Henderson's refusal to consider or make available critical evidence left the arbitral record in a state in which neither the Arbitrator, nor Elliott, nor his Union, nor this Court know what information had been made available to Commissioner Goodell when he imposed Elliott's discipline. That is because Henderson precluded the essential evidence—Goodell's testimony—about what, if anything, Goodell knew about NFL Director of Investigations Roberts' conclusion that the NFL had compiled insufficient evidence to overcome Thompson's credibility problems and discipline Elliott. Henderson thus conducted a proceeding whereby he was forced to make the extraordinary assertion that there is "sufficient credible evidence to support *whatever* determinations [Commissioner Goodell] made." Award at 8 (emphasis added). In other words, Henderson afforded "deference [to the Commissioner's] judgments" (*id.*) without even knowing what those judgments were, or how they were impacted by League executives' cover-up.

Henderson's Award also resolves the central credibility issue by adopting Thompson's version of events over Elliott's, concluding that the Commissioner fairly and consistently found "credible evidence" to support discipline under the Personal Conduct Policy ("PCP"). Henderson, however, had already denied Elliott his fundamental right—under the unique circumstances of this case—to confront his accuser, and to obtain access to the investigator notes of her six interviews. Everyone involved agreed that Thompson's credibility was the linchpin to reviewing the Commissioner's finding of credible evidence. But Henderson not only precluded her testimony, he did so against the backdrop of the NFL suppressing Roberts' conclusion that the League's investigation had not yielded sufficient corroborating evidence to overcome Thompson's undisputed lack of credibility. Henderson thus denied Elliott a fair and meaningful chance to

2

contest the Commissioner's credibility determination as unfair and inconsistent with the PCP's credible evidence standard.

Petitioners reiterate that they do not ask this Court to make its own judgments about whether there is credible evidence to sustain Elliott's discipline under the PCP. Rather, the *legal* question presently before the Court is whether Petitioners have raised at least serious questions that Henderson's refusals to consider vital witness testimony and documents were not mere procedural errors but rose to the level of fundamental unfairness under Fifth Circuit law. The Award provides further confirmation that the answer to this question is "yes."

Henderson's Award also confirms that this case presents unique factual circumstances, different from *Brady*, *Peterson*, *Holmes* or any other precedent the NFL has submitted: the arbitration turned entirely on the accuser's credibility and the need for the Commissioner to find credible evidence to support a PCP violation; the NFL's investigators unanimously found that Thompson had credibility problems; the NFL Director of Investigations (Roberts) further concluded that based on her comprehensive review of all the evidence and her six interviews of the accuser, *no* discipline was appropriate; the NFL kept Roberts and her conclusions away from the Commissioner and his advisors and out of the Elliott Report; the NFL tried to keep Roberts from testifying at the arbitration; Henderson refused to compel or consider crucial testimony from Goodell about what if any information he knew about Roberts' conclusions and Thompson's credibility; and then Henderson deferred to the Commissioner's evidentiary judgments— "*whatever*" they might have been (because Henderson—like Petitioners and the Court—does not know).

Preliminary injunctive relief and vacatur may be extraordinary remedies, but the Award supplies further evidence that this is such an extraordinary case.

## ARGUMENT

### A. The Award Supports The Conclusion That Petitioners Were Denied Fundamental Fairness

Although the Award does not—and could not—change any of Petitioners' arguments about fundamental fairness because Henderson's adverse procedural determinations had already been made before the arbitration hearings ended, it does underscore them.

#### 1. Refusal to Compel Goodell's Testimony and the NFL's Suppression of Evidence

Henderson acknowledges that his role as an Article 46 arbitrator included reviewing whether the Commissioner had rendered his disciplinary decision "without any proper consideration of [the] circumstances." Award at 7. But this acknowledgment punctuates exactly why it was so critical to conducting a fundamentally fair hearing that Henderson afford Petitioners the opportunity to identify what "circumstances" Goodell actually knew about and "consider[ed]." *Id.* Specifically, it was fundamentally unfair to deprive Petitioners of their right to question Goodell and ask him whether and to what extent he had considered (or even knew about) Roberts' conclusion that the NFL had collected insufficient evidence to overcome Thompson's lack of credibility to support discipline. Henderson's blind deference to "***whatever*** determinations [the Commissioner] made" epitomizes fundamental unfairness. *Id.* at 8 (emphasis added). This is especially so given Henderson's finding that "the Commissioner has broad discretion to decide the process for taking action against a player for conduct detrimental" and "is entitled to deference on those judgments." *Id.* at 7, 8. For Petitioners to have any fair opportunity to contest that finding, it was essential for them to have access to evidence of what those judgments were based upon.

In this vein, Petitioners argued at the arbitration that Henderson should not defer to the Commissioner's judgments about new evidence that had not previously been presented to him. The Award finds, however, that "[n]ew evidence does not include anything the parties knew, or

4

could have known, at the time the discipline was imposed." Award at 6. But at that point in time, Elliott and the NFLPA knew nothing of Roberts' conclusions, and it appears that neither did the Commissioner nor his disciplinary advisors. Henderson's procedural rulings thus created a situation in which he afforded deference to the Commissioner's purported judgment about evidence—Roberts' conclusion that her own investigation yielded insufficient evidence to support discipline—that was only first revealed at the arbitration and apparently unknown to Goodell at the time he imposed the discipline.

Further confirming how the arbitral process defied fundamental fairness, the Award overtly recognizes NFL executives' efforts to suppress evidence that was fundamental to the arbitration proceedings. The Court is very familiar with the arbitral record on this score. Now, however, Henderson has acknowledged that it was an anomaly for Friel and Roberts *not* "to make a recommendation on discipline based on their investigation and report." *Id.*[2] Henderson also concedes that Roberts "could not explain why she was not invited to participate in the meeting with the [outside expert advisors]." Award at 5. And, at that meeting, Friel intimated to those advisors that the NFL's investigators *did* find Thompson credible with respect to four of the five alleged incidents of abuse, and Friel also told the Commissioner that *she* thought there was sufficient evidence to proceed with discipline, but the Commissioner never spoke with Roberts. *See* June 26, 2017 Hr'g Tr., Ex. A-NFLPA-45 at 151:20-152:7; Arb. Hr'g Tr. (Aug. 30), Ex. C at 338:23-339:5; Arb. Hr'g Tr. (Aug. 29), Ex. C at 163:11-13. All of this fortifies the conclusion that

---

[2] Henderson writes in his Award that Friel "expressed surprise that [she was] not asked to make a recommendation on discipline based on [her] investigation and report." Award at 5. Although not itself a basis for vacatur, it bears mention just how far Henderson will go to paper over the League's efforts to suppress evidence—Friel in fact testified in no uncertain terms that it was **her** decision "in conjunction with counsel" to exclude from the Elliott Report any disciplinary recommendation from the League's investigators. Arb. Hr'g Tr. (Aug. 30), Ex. C at 265:10-21.

fundamental fairness required that Petitioners have the opportunity to question the Commissioner—especially in a proceeding where the arbitrator's "responsibility is to determine whether the Commissioner's decision on discipline of Mr. Elliott is . . . without any proper consideration of the circumstances." Award at 7.

### 2. Refusal to Compel Thompson's Testimony and Investigator Notes

The Award also confirms that one of the "significant changes in the procedures for discipline" under the PCP was the addition of the "credible evidence" standard when the accused player has not been charged with any crime. Award at 4-5. Further, the Award recognizes that "an adjudicator makes informed judgments on the credibility of witnesses and evidence." *Id.* at 8. Yet despite the undisputed centrality of credibility issues with respect to Thompson, and Henderson acknowledging that "the record contains inconsistencies in statements" (*id.*), he denied the most fundamental witness testimony and investigator notes of all: Thompson's. *See, e.g.,* Ex. A-NFLPA-55 at 2-3 (Henderson holding that Thompson's "testimony and availability for cross examination" was not "essential to Mr. Elliott's defense").

Furthermore, Henderson's Award discredits the sworn testimony of Alvarez Jackson and the sworn affidavit of Macie Hewitt in support of Elliott, instead adopting the accounts of Thompson without so much as a sworn statement from her, let alone live testimony subject to cross-examination and penalties of perjury. *See* Award at 6-7. How could it be fundamentally fair for the arbitrator not to compel Thompson's live testimony yet credit her unsworn and largely undocumented and inconsistent interview statements over contrary sworn witness accounts, and despite NFL investigators' unanimous testimony that Thompson had "credibility issues"?[3] In a

---

[3] Henderson concedes that Roberts and Friel are "both seasoned prosecutors with extensive experience investigating domestic violence crimes." Award at 5. And even Friel acknowledged Thompson's "credibility issues." Arb. Hr'g Tr. (Aug. 30), Ex. C at 267:1-2.

proceeding all about Thompson's credibility and the existence of credible evidence, Henderson could not lawfully deny the accused the right to examine the most essential, exculpatory witness and documents.

In sum, the Award does not change the arguments or facts presented to the Court in the TRO Motion or Petition, but it further supports the conclusion that Henderson—in violation of Fifth Circuit arbitral law—improperly "refus[ed] to hear pertinent and material evidence" and in so doing "prejudice[d] the rights of the parties to the arbitration proceedings." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 300-301 (5th Cir. 2004) (internal quotations omitted). *See also Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995) (applying fundamental fairness standard to labor arbitration proceedings).

### B. The Award Further Confirms That The NFL's Jurisdictional Argument Is Meritless

Petitioners previously addressed, in their September 5 submission (Doc. No. 13 at 1-3), and at the TRO hearing, why the NFL's exhaustion-of-remedies argument is wrong. Petitioners will not recite their prior arguments here, but will instead briefly address how the Award reinforces these arguments.

Most significantly, the Award confirms that there was absolutely nothing left for Petitioners to exhaust in the arbitration process. The NFLPA and Elliott filed their Petition and the TRO Motion *after* Henderson had rendered final rulings on all procedural matters; there was nothing left for him to decide or "fix." Indeed, the Award does not reconsider let alone mention

any of the evidentiary denials that are at the heart of this action. The Award has changed nothing germane to the Court's analysis of Petitioners' vacatur claim.[4]

And even if the NFL's exhaustion of remedies argument had any validity in the first place (it did not), the Award has now been issued, and the Court will not have taken any action on this TRO Motion (or otherwise) before the Award came down.

It is now evident that the NFL's meritless arguments about exhaustion of remedies, standing, and ripeness were nothing more than calculated gamesmanship to try to deprive Petitioners—the natural plaintiffs in this dispute—of their chosen forum. Last night, shortly after the TRO hearing concluded, the NFL filed its own Complaint in the Southern District of New York, seeking to confirm the Award and improperly evade this Court's review. *See* Complaint, *NFL Management Council v. NFLPA*, No. 17-CV-06761 (S.D.N.Y. Sept. 5, 2017) (Doc. No. 1).

Petitioners waited until after they had exhausted all efforts to obtain the witnesses and evidence that fundamental fairness required, and after the arbitral record had closed, before initiating this action. The Award and ensuing suspension were imminent. Petitioners did not wait for the Award to come down because to do so would have deprived the Court of the opportunity to immediately enjoin discipline borne out of fundamentally unfair proceedings and thereby protect Elliott from the irreparable harm of missed practices and games. This approach was procedurally proper and the only just and fair means to prevent the NFL from evading timely Court review. Petitioners thank the Court for its diligence in taking up this matter so promptly.

---

[4] This fact also underscores why the NFL's ripeness and standing arguments also fail.

Dated: September 6, 2017
Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Thomas M. Melsheimer*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
tmelsheimer@winston.com
**Lane M. Webster (*pro hac vice* pending)**
Texas Bar No. 24089042
lwebster@winston.com

2501 N. Harwood Street, 17th Floor
Dallas, TX 75201
(214) 453-6500 – Telephone
(214) 453-6400 – Facsimile

**Jeffrey L. Kessler (*pro hac vice* pending)**
New York Bar No. 1539865
jkessler@winston.com
**David L. Greenspan (*pro hac vice* pending)**
New York Bar No. 4042099
dgreenspan@winston.com
**Jonathan Amoona (*pro hac vice* pending)**
New York Bar No. 4797338
jamoona@winston.com
**Angela A. Smedley (*pro hac vice* pending)**
New York Bar No. 4942132
asmedley@winston.com
**Isabelle Mercier-Dalphond (*pro hac vice* pending)**
New York Bar No. 5187604
imercier@winston.com

200 Park Avenue
New York, New York 10166
(212) 294-6700 – Telephone
(212) 294-4700 – Facsimile

*Counsel for Petitioners National Football League Players Association and Ezekiel Elliott*

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing document was filed electronically on September 6, 2017, in compliance with Local Rule CV-5(a).

                     */s/ Thomas M. Melsheimer*
                     Thomas M. Melsheimer