IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own Behalf and on behalf of EZEKIEL ELLIOTT, | § § § § § | |
| Petitioner, | § § | |
| v. | § § | No. 4:17-CV-00615-ALM |
| NATIONAL FOOTBALL LEAGUE and NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, | § § § § § | |
| Respondents. | § | |

## RESPONDENTS' RESPONSE TO PETITIONER'S MOTION TO STRIKE AND SECOND SUPPLEMENTAL BRIEF

The National Football League and the NFL Management Council ("Respondents") hereby oppose Petitioner National Football League Players Association's ("Petitioner" or "NFLPA") Motion to Strike. Respondents' brief was fully in accord with the Court's order that the parties could file one last brief on the issues raised at the September 6, 2017 hearing by 5 pm on September 7. Moreover, contrary to Petitioner's claim, Respondents' brief, including the sections Petitioner seeks to strike, in fact did address the impact of the Arbitrator's Award on Petitioner's motion for injunctive relief. There is accordingly no basis whatsoever for Petitioner's motion to strike or to permit Petitioner to file a fourth brief on this issue. In the event the Court permits such a filing, Respondents offer the following brief response to Petitioner's Second Supplemental Brief.[1]

---

[1] Respondents will not respond to Petitioner's *ad hominem* attacks or to every misstatement contained in Petitioner's Second Supplemental Brief.

**1.** The NFLPA's attempt to avoid the clear and consistent authority that no injunction may issue because the Court lacks jurisdiction and Petitioner lacks standing is meritless. Petitioner confusingly attempts to distinguish the Supreme Court's decision in *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, but the Court's opinion speaks for itself: "Of course, if it should be decided after trial that the grievance award involved here is not final and binding under the collective bargaining agreement, *no action under § 301 to enforce it will lie*." 372 U.S. 517, 520 (1963) (emphasis added). That statement was the flipside of the Supreme Court's earlier observation (using the identical "final and binding" language) that if the award instead *was* found to be "final and binding, the District Court *has jurisdiction under § 301 to enforce it.*" *Id.* at 519 (emphasis added). The NFLPA feigns confusion, but there is nothing "mystifying" (Sec. Supp. Br. 5) about how those principles map on to this action, filed at a time when the NFLPA *concedes* that no award was "final and binding."

That concession likewise upends the NFLPA's continued claim that a party fully exhausts when the "*arbitral record* [i]s closed," Sec. Supp. Br. 6 (emphasis added), rather than when the *arbitration* proceeding comes to an end through the issuance of an award—a principle of black letter arbitral and federal labor law. *See* CBA Art. 46, § 2(d), Kessler Decl., Ex. A-NFLPA-58 (ECF No. 1-62) (arbitrator's award, not close of evidence, constitutes the "full, final and complete disposition of the dispute" between the parties); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 166 n.16 (1983) (recognizing that a "grievance has run its full course" when it "culminat[es] in a formal award"); *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen & Helpers*, 746 F.2d 1316, 1319 (2d Cir. 1984) ("The arbitrator's decision is the final step in the remedies provided by the agreement which an employee is

required to exhaust before he or she may bring suit for breach of the contract."). Petitioner offers *no* contrary authority.

The NFLPA also makes much of the fact that other circuits have held that a premature suit under Section 301 does not technically pose a "jurisdictional" problem, but is instead merely defective and subject to immediate dismissal. *E.g., Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 614 (3d Cir. 1990) (though not "jurisdictional," district courts should not "entertain section 301 actions prior to an arbitration being *complete in all respects*") (emphasis added). Obviously, this argument does not help the NFLPA, but instead makes Respondents' point: the Petition to Vacate a "forthcoming" award is subject to immediate dismissal under Section 301 of the LMRA. *See, e.g.*, *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 726 (9th Cir. 1991) ("Generally a district court may review an arbitrator's rulings pursuant to section 301 of the LMRA only after there is a final award."). Regardless, Petitioner offers no response to *Fifth Circuit* authority holding that exhaustion is "jurisdictional." *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402-03 (5th Cir. 2000). And Petitioner has never disputed that the post-filing issuance of the Award cannot confer jurisdiction or standing if they were previously lacking. *See* NFL Supp. Br. 2-3.

**2.** As to standing, the NFLPA claims that Elliot suffered several injuries before the arbitration Award issued. *See* Sec. Supp. Br. 9. Even assuming *arguendo* those injuries are constitutionally cognizable, they do not give rise to standing. The NFLPA continues to ignore the bedrock principle that a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation and internal quotation marks omitted). Because the NFLPA seeks only to "vacate the Award," Pet. 30

(Prayer for Relief), it must demonstrate that at the time it filed suit that Elliot was harmed by the Award itself. As the Award did not exist at that time, such a showing is simply impossible.

The NFLPA's other tack is to insist that the yet-to-be-issued Award was certain to cause harm. *See* Sec. Supp. Br. 9-12. But its purported factual distinctions cannot surmount the Supreme Court's straightforward and unequivocal holdings that "*no* amount of evidence," *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990) (emphasis added), can support a claim of standing based on "the unfettered choices made by independent actors not before the court," *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 414 n.5 (2013). As such, the NFLPA's laundry list of reasons for believing that the Award would necessarily affirm the suspension—including *ad hominem* attacks on the Arbitrator's motives and credibility—cannot *as a matter of law* "prove in advance" that the Arbitrator would reach "any particular result." *Whitmore*, 495 U.S. at 159-60. Nothing in the NFLPA's bare recital of the facts of *Whitmore* explains why predicting the Arbitrator's decision here is any less speculative than predicting that "the judicial system will lead to any particular result in [a] case." *Id.* It is undisputed that, when this action was filed, *all* the relief sought by the Petition could have been awarded by the Arbitrator.

**3.** The NFLPA's contention that this action, rather than the action to confirm the actual Award filed in New York, is the "first-filed" action depends entirely on the notion that there is subject-matter jurisdiction here. *See* Sec. Supp. Br. 13. But the NFLPA does not dispute that if jurisdiction is lacking, this action cannot be the "first-filed" action and must be dismissed. *See* NFL Supp. Br. 8. Moreover, the NFLPA is free to seek identical relief in the New York Action before the suspension goes into effect.

In all events, the NFLPA's justifications for maintaining venue here rather than in the New York Action wither in the face of its representations elsewhere. The NFLPA casts *Johnson*

4

*v. National Football League Players Association* as a case in which it sought transfer from Ohio to New York simply because the player did not reside or play in Ohio. *See* Sec. Supp. Br. 15 n.7. But the player there also *chose* the forum, and the NFLPA nonetheless successfully moved to transfer the player's petition to vacate the Article 46 arbitration award upholding his suspension based on an argument that is directly applicable here: "The New York arbitration, before a New York arbitrator, reviewing New York-imposed discipline by a New York party, under a policy governed by New York law, is the *sine qua non* of this action. It should, accordingly, be transferred to the Southern District of New York[.]" Reply Br. at 3, *Johnson v. Nat'l Football League Players Ass'n*, No. 5:17-cv-47-SL, 2017 WL 2882119 (N.D. Ohio July 6, 2017) (ECF No. 37).

## CONCLUSION

For the foregoing reasons, and those stated in Respondents' other briefs, Petitioner's Motion for Temporary Restraining Order should be denied and the Petition to Vacate should be dismissed. Alternatively, the Court should transfer this action to the United States District Court for the Southern District of New York.

5

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

 */s/ Eric Gambrell*
Eric Gambrell
egambrell@akingump.com
Texas Bar No. 00790735
*Lead Attorney*
Patrick G. O'Brien
pobrien@akingump.com
Texas Bar No. 24046541
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Daniel L. Nash
*Pro hac vice*
dnash@akingump.com
Nathan J. Oleson
*Pro hac vice*
noleson@akingump.com
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys For Respondents*
*National Football League And*
*National Football League Management*
*Council*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record in this case who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Patrick G. O'Brien*