**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **NATIONAL FOOTBALL LEAGUE** | § | |
| **PLAYERS ASSOCIATION, on its own** | § | |
| **Behalf and on behalf of EZEKIEL** | § | |
| **ELLIOTT,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **No. 4:17-CV-00615-ALM** |
| | § | |
| **NATIONAL FOOTBALL LEAGUE and** | § | |
| **NATIONAL FOOTBALL LEAGUE** | § | |
| **MANAGEMENT COUNCIL,** | § | |
| | § | |
| **Respondents.** | § | |

## RESPONDENTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL

Nothing in Petitioner National Football League Players Association's opposition changes the conclusion that an immediate stay pending appeal of the Court's preliminary injunction ("PI Order") should be granted.  Petitioner does not dispute that to obtain a stay pending appeal, Respondents "'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting a stay.'"  Mot. at 2 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).  Respondents easily make that showing in light of ample precedent requiring dismissal of premature actions and barring vacatur of labor arbitration awards under a vaguely defined "fundamental fairness" standard.

An immediate stay of the PI Order pending appeal would be necessary, moreover, even if Petitioner's arguments on jurisdiction and the validity of the Award were apposite.  They are not.  As to jurisdiction, Petitioner asserts for the very first time—in its *fifth* brief filed in this Court— that its failure to exhaust is excused because of Respondents' supposed "repudiation" of the collectively bargained grievance procedures.  But Fifth Circuit precedent is clear and consistent:

the narrow "repudiation" exception has no application where both parties were undisputedly participating in the arbitration process. *See, e.g.*, *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 288 (5th Cir. 1988) ("The fact that [the employer] actually processed [the employee's] grievances . . . undermines" the argument "that [the employer] repudiated the contract's remedial procedures."); *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 520 (5th Cir. 1978) ("An employer can obviously take a stance contrary to that of the employee during the grievance process without being deemed to have repudiated that process.").

As to the merits, Petitioner is wrong to argue that "fundamental fairness" review, untethered to whether an arbitrator was "arguably construing or applying the contract," provides a basis for vacatur under the Labor Management Relations Act's extraordinarily circumscribed standards. *See, e.g.*, *Nat'l Football League Players Ass'n ex rel. Peterson v. Nat'l Football League*, 831 F.3d 985, 999 (8th Cir. 2016) ("We have never suggested that when an award draws its essence from the collective bargaining agreement, a dissatisfied party nonetheless may achieve vacatur of the arbitrator's decision by showing that the result is 'fundamentally unfair.'"). Nor could the Arbitrator's procedural rulings have been "fundamentally unfair" in any event, given that the Arbitrator did not even arguably violate any of the CBA's bargained-for procedures. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n ex rel. Brady*, 820 F.3d 527, 547 (2d Cir. 2016) ("There is simply no fundamental unfairness in affording the parties precisely what they agreed on."); *see, e.g.*, ECF No. 1-62 (Kessler Decl., Ex. A-NFLPA-58), CBA Art. 46, § 2) (limiting scope of discovery to merely "exchange [of] copies of any exhibits upon which [parties] intend to rely," and specifying nothing about mandatory witness testimony).

As Petitioner concedes, a sufficiently strong likelihood of success makes a stay appropriate even where the other equitable factors are "not heavily tilted in movant's favor." Resp. Br. 6 (quoting *Ruiz*, 650 F.2d at 565-66).   But Petitioner fails to rebut Respondents' showing on those factors regardless.   Petitioner contends that Respondents cannot be suffering irreparable harm because, in accordance with the CBA, Respondents waited to impose Elliott's suspension until he exercised his right under the CBA to an "opportunity for a hearing at which he may be represented by counsel of his choice."   Resp. Br. 4 (quoting NFL Player Contract ¶ 15).   But Petitioner ignores that the primary harm Respondents face is the *ongoing judicial interference with the parties' contract*.   Indeed, the fact that the parties explicitly bargained for highly expedited procedures resulting in "full, final, and complete" resolution means that is Petitioner, not Respondents, who is truly breaching the CBA.   *See* CBA Art. 46 § 2(d), (f)(i) (requiring in-season suspensions to be heard by "the second Tuesday" following appeal and to be decided "[a]s soon as practicable").   Petitioner should not be allowed to evade its CBA obligations by delaying suspensions indefinitely through the courts.

Petitioner also makes much of the fact that Elliot will suffer various speculative consequences if he is prohibited from playing six games this season.   Precedent forecloses those arguments.   *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income . . . does not usually constitute irreparable injury."); *id.* at 91-92 ("A claim that her reputation would be damaged . . . falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction.").   This Court should reject Petitioner's request to craft a special rule that applies only to professional athletes.   *See Brown v. Pro Football, Inc.*, 518 U.S. 231, 249-50 (1996) ("Ultimately, we cannot find a satisfactory basis for distinguishing football players from other organized workers.   We therefore conclude that all

must abide by the same legal rules."). Elliott's fame and notoriety provide no license to ignore the longstanding federal labor policy preference to avoid judicial interference with the private dispute resolution process for which the parties here bargained. *See United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 37 (1987). Accordingly, the balance of equities tips strongly in favor of staying the PI Order pending Fifth Circuit review.

Now that this emergency stay request is fully briefed, Respondents would respectfully request that this Court rule on the request as expeditiously as possible. If this Court declines to grant relief, Respondents intend to seek a stay from the Court of Appeals and believe it is important to give the Court of Appeals the opportunity to act promptly. Accordingly, if this Court is unable to issue a decision by the end of the day tomorrow, Respondents intend to seek a stay of the PI Order from the Fifth Circuit on the morning of Friday, September 15, 2017, as the Rules contemplate. *See* FED. R. APP. P. 8(C) (permitting filing of stay motion with Court of Appeals where, "a motion having been made, the district court . . . failed to afford the relief requested").

**CONCLUSION**

For the foregoing reasons, and those stated in Respondents' motion, the PI Order should be stayed pending Respondents' appeal.

Respectfully submitted,


AKIN GUMP STRAUSS HAUER & FELD LLP

 /s/ Eric Gambrell
Eric Gambrell
egambrell@akingump.com
Texas Bar No. 00790735
*Lead Attorney*
Patrick G. O'Brien
pobrien@akingump.com
Texas Bar No. 24046541
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Daniel L. Nash
*Pro hac vice*
dnash@akingump.com
Nathan J. Oleson
*Pro hac vice*
noleson@akingump.com
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys For Respondents*
*National Football League And*
*National Football League Management*
*Council*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of September, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record in this case who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Patrick G. O'Brien*