# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of EZEKIEL ELLIOTT<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL | Civil Action No. 4:17-CV-00615<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

On September 11, 2017, the National Football League and National Football League Management Council (collectively "NFL") filed an "Emergency Motion to Stay Injunction Pending Appeal" ("Emergency Motion") (Dkt. #30). The briefing for the motion was complete at 6:05 p.m. CST on September 13, 2017. At the conclusion of its reply brief, the NFL advised the Court that if the Court was "unable to issue a decision by the end of the day tomorrow [September 14, 2017], Respondents intend to seek a stay of the PI Order from the Fifth Circuit on the morning of Friday, September 15, 2017, as the Rules contemplate." (Dkt. # 30 at p. 5). Because the Court was presiding over a patent trial, the Court was unable to reach the NFL's Emergency Motion within the NFL's requested time constraints which, the Court notes, was less than twenty-four hours after the briefing on the Emergency Motion was complete.

Because the Court did not issue an order on the NFL's Emergency Motion within the NFL's requested period of time, the NFL did, in fact, file an "Emergency Motion for Stay Pending Appeal" with the Fifth Circuit on September 15, 2017. In its Emergency Motion in front of the Court, the NFL is complaining that the Court essentially issued a premature order by failing to wait for the arbitrator to issue his ruling and therefore, lacked subject matter jurisdiction. Oddly,

the NFL is now seeking expedited relief from the Fifth Circuit without first waiting for the Court to rule on the identical issue. The irony is not lost on the Court.

## BACKGROUND

In the action before the Court, the National Football League Players Association ("NFLPA"), on behalf of Dallas Cowboys running back Ezekiel Elliott ("Elliott"), seeks to vacate arbitrator Harold Henderson's ("Henderson") decision to affirm the National Football League Commissioner Roger Goodell's ("Commissioner Goodell") six-game suspension of Elliott. The basis for the NFLPA's Petition to Vacate is that Henderson denied Elliott a fundamentally fair arbitration proceeding by denying certain evidentiary requests: (1) Henderson denied Elliott access to investigators' notes; (2) Henderson denied Elliott the ability to cross-examine Tiffany Thompson ("Thompson"); and (3) Henderson denied Elliott the ability to question Commissioner Goodell.

The NFLPA filed its Petition to Vacate Arbitration Award prior to Henderson issuing an award (Dkt. #1). The NFLPA additionally filed an Emergency Motion for Temporary Restraining Order or Preliminary Injunction ("Motion for Preliminary Injunction") (Dkt. #5). The NFL filed a response to the Motion for Preliminary Injunction (Dkt. #8). On September 5, 2017, the Court held a hearing on the Motion for Preliminary Injunction, and during the hearing, Henderson issued his final award. The Court allowed the parties to file supplemental briefing addressing the impact of the award. Both the NFLPA and the NFL filed a supplemental brief by 5:00 p.m. on September 6, 2017 (Dkt. #23; Dkt. #24). On September 8, 2017, the Court issued a Memorandum Opinion and Order granting the Motion for Preliminary Injunction ("the Preliminary Injunction Order") (Dkt. #28).

Following the Preliminary Injunction Order, the NFL filed a notice of appeal indicating that the NFL appealed the preliminary injunction to the United States Court of Appeals for the Fifth Circuit (Dkt. #29). The NFL also filed the present Emergency Motion (Dkt. #30). The Court ordered expedited briefing (Dkt. #30). On September 13, 2017, in accordance with the Court's order on expedited briefing, the NFLPA filed a response (Dkt. #34). Additionally, on September 13, 2017, the NFL filed a reply to the Emergency Motion (Dkt. #35).

## APPLICABLE LAW

District courts have the inherent power to stay proceedings pending before them, but this power is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re M.J. Beebe*, 1995 WL 337666, at *2 (5th Cir. May 15, 1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts determining whether to issue a stay pending appeal may consider factors such as (1) whether the movant is likely to succeed on the merits; (2) whether the movant would suffer irreparable harm absent a stay; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987). Where "there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being require to go forward." *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) ("'[A] stay is not a matter of right, even if irreparable injury might result otherwise.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'"(citation omitted)).

**ANALYSIS**

The NFL asks the Court to enter a stay of the Preliminary Injunction Order pending the NFL's appeal because it can establish all four elements required by law. (Dkt. #30). The NFLPA contends that the Court should deny the stay because Elliott, not the NFL, will suffer irreparable harm. (Dkt. #34). Further, the NFLPA contends that the NFL cannot satisfy the remaining elements necessary to justify the Court issuing a stay (Dkt. #34).

In order to stay an injunction, the movant must first demonstrate a likelihood of success on the merits on appeal. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). The Fifth Circuit has stated that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. Unit A June 1981) (citing *Providence Journal v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979); *Hous. Insulation Contractors Ass'n v. Nat'l Labor Relations Bd.*, 339 F.2d 868, 870 (5th Cir. 1964)). The Fifth Circuit further explained that "if the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits." *Id.* The Court acknowledges that there are serious legal questions involved in the case, and as such if the NFL demonstrates a substantial case on the merits, then this element is met.

The NFL asserts that it has presented a substantial case on the merits based on the Court's resolution of the jurisdictional issue and the Court's decision on the merits of the injunction. First, the NFL argues that the Court only reached the merits of the case after "resolving a series of contested legal issues in Petitioner's favor" (Dkt. #30 at p. 2). The NFL asserts that "this Court

held that Petitioner met its burden of proving that it exhausted (or was excused from exhausting) its administrative remedies—even though Petitioner had not 'support[ed] [its] theory of exhaustion with any case law.'" (Dkt. #30 at p. 3) (alterations in original). The NFL further maintains that the NFLPA failed to raise the argument that the Court should apply an exception to the exhaustion requirement until its "*fifth* brief filed in this Court."[1] (Dkt. #35 at p. 1).

However, the NFL overlooks the NFLPA's reply to its motion for preliminary injunction, which states, "[t]he NFL's Opposition ignores the critical point that the arbitral process at issue *already* violates labor law and the NFL-NFLPA CBA and therefore vests jurisdiction in this Court under Section 301 of the LMRA." (Dkt. #13 at p. 2). It also disregards the argument the NFLPA made at oral argument that "there is clearly jurisdiction the moment that a breach of the Collective Bargaining Agreement took place, which has already taken place in this hearing, and that there is no issue of jurisdiction at all." (Dkt. #32 at p. 7:19–22). This argument that the NFL breached the CBA ultimately was the reason the Court applied an exception to the exhaustion requirement.

The Court acknowledges that it is the NFLPA's burden[2] to establish the basis for federal court jurisdiction and the NFLPA's argument for an exception could have been clearer. However, it is also the Court's responsibility to address its own subject matter jurisdiction. *Arbaugh*, 546

---

[1] The Court addresses exhaustion of administrative remedies under the jurisdictional section because that is where it is argued; however, the Court does not believe that exhaustion is a jurisdictional requirement and addresses it only out of an abundance of caution. The NFL cites *Meredith* for the proposition that exhaustion is jurisdictional. *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000). Upon closer examination, *Meredith* relied on *Vaca* for the notion, and *Vaca* merely states that failure to exhaust is a defense, not a jurisdictional issue. *Vaca v. Sipes*, 386 U.S. 171 (1967); *Meredith*, 209 F.3d at 402. Furthermore, after the Fifth Circuit decided *Meredith*, the Supreme Court of the United States granted certiorari to answer the question, on a broad sense, whether a limit in a statute is jurisdictional or an element of the claim. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). The Supreme Court stated that when Congress does not identify an element "as jurisdictional, courts should treat the restriction as nonjurisdctional in character." *Id.* Here, the statute, which confers jurisdiction to federal courts in labor relations cases, makes no mention of the requirement to exhaust remedies. 29 U.S.C. § 185.

[2] To clarify, it is the NFLPA's burden to establish subject matter jurisdiction after it is challenged in a motion to dismiss. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The NFLPA has not responded to the motion to dismiss, as the time to do so has not yet passed, and as such the Court has not held that the NFLPA has or has not met its burden establishing jurisdiction. The Court needed to address jurisdiction on its own, before ever ruling on the motion to dismiss, to properly issue a preliminary injunction in this case.

U.S. at 514 (2006); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). In doing so, the Court may consider "(1) the [petition] alone; (2) the [petition] supplemented by the undisputed facts evidenced in the record; or (3) the [petition] supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court accepts as true all well-pleaded allegations set forth in the NFLPA's Petition and construes those allegations in the light most favorable to the NFLPA. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Here, looking to the NFLPA's Petition, the undisputed facts evidenced in the record, and the Court's resolution of any disputed facts, the Court found that an exception the exhaustion requirement applied.

The NFL additionally attacks the applicability of the repudiation exception in this case because both parties were participating in the arbitration process. (Dkt. #35 at p. 1–2 (citing *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 288 (5th Cir. 1988)). The NFL supports is position with two cases, which are each distinguishable from the current set of facts. First, the NFL quotes the Fifth Circuit's finding in *Banche v. American Telephone and Telegraph* that "'[t]he fact that [the employer] actually processed [the employee's] grievances . . . undermines' the argument 'that [the employer] repudiated the contract's remedial procedures.'" (Dkt. #35 at p. 2 (citing 840 F.2d 283, 288 (5th Cir. 1988)). The Fifth Circuit did not make that finding as a general statement on the law, but about the specific facts of that case. *Id.* In *Banche*, the employees claimed the employer repudiated procedures when the employer, in a previous arbitration, stated disputes arising under the parties' Amended Memorandum of Agreement were not subject to the grievance procedure. *Id.* In rejecting that contention, the Fifth Circuit held that the employees' argument was undermined by the fact that the employer already processed the grievances, resulting in the

language the NFL quoted in its brief. *Id.* Here, the Court acknowledges that the grievance procedure in the CBA applied to Elliott, but it was the NFL's conduct during that process that acted as a repudiation of the remedial procedures in the CBA. Processing Elliott's grievance while actively breaching the CBA does not undermine the argument that the NFL repudiated the CBA's remedial procedures.

The NFL additionally cites to *Rabalais v. Dresser Industries, Incorporated* to support its contention, explaining that "[a]n employer can obviously take a stance contrary to that of the employee during the grievance process without being deemed to have repudiated that process." (Dkt. #35 at p. 2 (citing 566 F.2d 518, 520 (5th Cir. 1978)). The Court agrees that an employer is allowed to take a different position than the employee during the grievance process, without repudiating the contract, otherwise nearly every grievance process would be repudiated. Here, the Court did not find that the NFL took a contrary position to the NFLPA and therefore the NFL repudiated the CBA. What the Court did find, is that through the NFL's withholding of evidence relevant to the hearing, the NFL deprived the NFLPA the right to present, by testimony or otherwise, any evidence relevant to the hearing, as required by the CBA. (*See* Dkt. #1, Exhibit 62 at p. 209). As such, the NFL does not present a substantial case on the merits regarding its jurisdictional argument.

The NFL also argues that it presented serious and substantial questions[3] on the merits of the preliminary injunction because review of an arbitration award is extremely narrow. (Dkt. #30 at p. 3 (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 507 (2001); *Union*

---

[3] The NFL changed the language of the standard from presenting a substantial case on the merits to "serious and substantial questions on the merits." The Court does not automatically penalize the NFL for the use of substantial questions rather than substantial case, and continues to analyze whether the NFL presented a substantial case on the merits, which is the standard imposed by the Fifth Circuit. The serious question standard applies to the legal questions presented; however if a serious legal question is presented the NFL must show a substantial case on the merits with respect to those serious legal questions. *Ruiz*, 650 F.2d at 565.

*Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam)). The Court agrees that the review of an arbitration award is very limited and narrow. *Misco*, 484 U.S. at 36; *Major League Baseball Players Ass'n*, 532 U.S. at 507; *Gulf Coast Indus. Workers Union v. Exxon Co. USA*, 70 F.3d 847, 850 (5th Cir. 1995) (quoting *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990)). The Court acknowledged as such in its Preliminary Injunction Order (Dkt. #28 at pp. 1, 13, 21).

Additionally, the NFL argues that finding gross error in the arbitrator's decision is not grounds for vacatur. (Dkt. #30 at p. 4 (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987))). The Court acknowledges that the NFL is correct that gross error is not grounds to vacate and "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the Court cannot intervene with the award. *Misco*, 484 U.S. at 39. This statement of the law is similarly true for the arbitrator's decision, when construing the procedural rules included in the CBA. However, an arbitration hearing must still provide a fundamentally fair hearing. *Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 815 F.2d 1017, 1022–23 (5th Cir. 1990); *Grovner v. Ga.-Pac. Corp.*, 625 F.2d 1289, 1290 (5th Cir. Unit B 1980) (citing *Wells v. S. Airways Inc.*, 616 F.2d 107 (5th Cir. 1980); *Totern Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979); *Parsons & Whittermore Overseas Co. v. Societe Gen. de L'Industrie du Papier (Rakta)*, 508 F.2d 969 (2d Cir. 1974)).

"A fundamentally fair hearing is one that 'meets the minimal requirements of fairness'— adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.' The parties must have an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298–99 (5th Cir. 2004). As such, an arbitrator's evidentiary decisions "must give each of the parties to the

dispute an adequate opportunity to present its evidence and arguments." *Forsythe*, 815 F.2d at 1023; *accord* (Dkt. #1, Exhibit 62 at p. 209) ("NFLPA and NFL have the right to attend all hearings provided for in [Article 46] and to present, by testimony or otherwise, any evidence relevant to the hearing."). Moreover, the Federal Arbitration Act ("FAA") provides guidance to courts on when they can vacate an award. Under the FAA, a Court is allowed to intervene when an arbitrator is "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy. 9 U.S.C. § 10(a)(3); *Misco*, 484 U.S. at 40. While the NFL is right that the Court's view of gross error is not a ground for vacatur, if an evidentiary error is one that "'so affects the rights of a party that it may be said he was deprived a fair hearing,'" the Court is permitted to intervene. *Forsythe*, 915 F.2d at 1023 (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.)). In other words, if the procedural error is "so gross to amount as affirmative misconduct," it is proper for the Court to vacate the award pursuant to the FAA. *Misco*, 484 U.S. at 40.

Here, the Court stayed true to the limited and narrow review provided for in the Labor Management Relations Act ("LMRA") and the FAA. The Court applied the facts to the appropriate legal principles in this case. Accordingly, the Fifth Circuit will review the Court's decision to grant the preliminary injunction for abuse of discretion. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Women's Med. Ctr. of Nw. Hou. v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001)).[4] Therefore, the NFL's argument that "whether the Fifth Circuit, on *de novo* review, will agree" raises "a substantial question" is misguided. (Dkt. #30 at p. 3). The NFL has not raised a substantial case on the merits that the Court abused its discretion. Indeed, the NFL's arguments

---

[4] If a case is grounded in erroneous legal principles the Fifth Circuit will use a *de novo* standard of review. *Byrum*, 566 F.3d at 445 (quoting *Women's Med. Ctr. of Nw. Houston*, 248 F.3d at 419). As the Court explained, the Court applied the correct legal principles and this standard of review does not apply.

all suggest that the Court did not apply the correct law to the case, which is an argument the Court finds is not likely to win on the merits.

However, if the NFL is arguing that the Court abused its discretion in applying the facts of to the applicable law of this case, the Court finds this argument similarly unpersuasive. Briefly summarized, Kia Roberts ("Roberts"), Director of Investigations, and Lisa Friel ("Friel"), Senior Vice President and Special Counsel for Investigations, investigated allegations of domestic violence made by Thompson against Elliott. After investigating the allegations and interviewing Thompson, Roberts found insufficient evidence existed to proceed with punishment. On the other hand, Friel, determined, without having interviewed Thompson, sufficient evidence existed to proceed with punishment. Roberts's views were kept from the NFLPA, Elliott, Commissioner Goodell's team of outside advisors, and possibly Commissioner Goodell himself. Conversely, Friel's views were shared with Commissioner Goodell and the outside advisors. In light of the background, the Court found that the denial of Commissioner Goodell and Thompson's testimony were gross evidentiary errors that so affected the rights of the NFLPA and Elliott, such that they were deprived of a fair hearing and it constituted misconduct by Henderson.

The Court also agrees with the NFLPA that the balance of the equitable factors weigh against granting a stay. When determining whether to grant a stay, a court must also weigh equitable factors such as the following: (1) whether the movant will suffer irreparable harm absent a stay; (2) whether the non-movant will suffer injury if the stay is granted; and (3) whether a stay serves the public interest. *See In re First S. Sav. Ass'n*, 820 F.2d at 704.

The NFL asserts that it will suffer irreparable harm absent a stay because the Preliminary Injunction Order interferes with the internal procedures bargained for by the NFL and NFLPA. Further, the NFL argues that Elliott will suffer no harm because he can recover any lost money, if

the suspension is permanently enjoined. It is well-recognized that Elliott will suffer injury if he has to serve an improper suspension while awaiting the resolution of the petition to vacate.[5] *Nat'l Football League Players Ass'n v. Nat'l Football League*, 598 F. Supp. 2d 971, 982 (D. Minn. 2008) ("*Williams*") (citing *Jackson*, 802 F. Supp. 226, 230–31 (D. Minn. 1992)); *Brady v. NFL*, 779 F. Supp. 2d 992, 1005 (D. Minn. 2011), *rev'd on other grounds*, 644 F.3d 661 (8th Cir. 2011); *Prof'l Sports, Ltd. v. Va. Squires Basketball Club Ltd*, 373 F. Supp. 946, 949 (W.D. Tex. 1974). Because Elliott will suffer injury, the NFL must make a clear case of hardship. *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr.*, 556 U.S. at 961. As the Court noted in the Preliminary Injunction Order, the Court is not interfering with the internal procedures, but is ensuring that the CBA is carried out in the manner proscribed. Accordingly, the NFL has shown little, if any, harm.

Finally, the NFL maintains that public interest supports issuing a stay of the preliminary injunction order because federal labor policy prefers private settlements for labor disputes. The Court acknowledges that there is a strong policy in favor of private settlements in labor disputes, which is supported by the limited review of arbitral awards in labor dispute cases. However, the Court still has a role to play in reviewing arbitral awards coming from labor disputes to ensure employees get a fundamentally fair hearing. *See Gulf Coast Indus. Workers Union*, 70 F.3d at 850; *Murphy Oil USA, Inc. v. United Steel Workers AFL-CIO Local 8363*, No. 08-3899, 2009 WL 537222, at *3 (E.D. La. Mar. 4, 2009). Additionally, there is a strong public interest to ensure that people are not unjustly punished. *Williams*, 598 F. Supp. 2d at 983 (citing *Shephard v. Whetson*, 1 N.W. 753, 754 (Iowa 1879); *United States v. Keegan*, 71 F. Supp. 623, 626 (S.D.N.Y. 1947)). As such, the public interest does not favor a stay.

---

[5] The Court additionally notes that the petition to vacate will not be able to be resolved before November 5, 2017 (this would be the sixth game of Elliott's suspension if it started Week 3 of the NFL season). If the Court were to find in the NFLPA's favor and grant the petition to vacate, Elliott would have already served the entirety of the six-game suspension. The Preliminary Injunction Order preserves the status quo while the Court resolves the NFLPA's Petition.

## CONCLUSION

It is therefore **ORDERED** that Respondents' Emergency Motion to Stay Injunction Pending Appeal (Dkt. #30) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 18th day of September, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE