## *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

October 13, 2017

Mr. David O'Toole
Eastern District of Texas, Sherman
101 E. Pecan Street
Federal Building
Room 216
Sherman, TX 75090-0000

        No. 17-40936    NFLPA v. NFL, et al
                        USDC No. 4:17-CV-615

Dear Mr. O'Toole,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Jann M. Wynne, Deputy Clerk
                        504-310-7688

cc:  Mr. Jonathan J. Amoona
     Mr. Paul D. Clement
     Honorable David Folsom
     Mr. John Eric Gambrell
     Mr. David Louis Greenspan
     Mr. Subash S. Iyer
     Mr. Steffen Nathanael Johnson
     Mr. Jeffrey L. Kessler
     Mr. Michael Dallas Lieberman
     Mr. Thomas M. Melsheimer
     Mr. David T. Moran
     Ms. Erin Murphy
     Mr. Daniel L. Nash
     Mr. Patrick G. O'Brien
     Mr. Nathan Joshua Oleson
     Ms. Rebekah Ricketts
     Mr. Pratik A. Shah
     Ms. Angela A. Smedley
     Mr. Andrew S. Tulumello

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 17-40936

_____

D.C. Docket No. 4:17-CV-615

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2017

Lyle W. Cayce
Clerk

NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, agent of on its own behalf and on behalf of Ezekiel Elliott,

        Plaintiff - Appellee

v.

NATIONAL FOOTBALL LEAGUE; NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL,

        Defendants - Appellants

Appeal from the United States District Court for the
Eastern District of Texas

Before PRADO, ELROD, and GRAVES, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is vacated, and remand to the district court with instructions to dismiss the case.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

JAMES E. GRAVES, JR., Circuit Judge, dissenting.

Certified as a true copy and issued
as the mandate on **Oct 13, 2017**

Attest:

*Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2017

Lyle W. Cayce
Clerk

No. 17-40936

NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, agent of on its own behalf and on behalf of Ezekiel Elliott,

        Plaintiff – Appellee,

v.

NATIONAL FOOTBALL LEAGUE; NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL,

        Defendants – Appellants.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CV-615

Before PRADO, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

On August 31, 2017, the National Football League Players Association (NFLPA) filed a complaint in the District Court for the Eastern District of Texas on behalf of Ezekiel Elliott, a running back for the Dallas Cowboys, seeking a preliminary injunction preventing enforcement of a forthcoming six-game suspension by the National Football League (NFL) and the National

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40936

Football League Management Council.  Elliott and the NFL had been engaged in the arbitration process following an investigation resulting from domestic violence allegations against Elliott.  After reviewing the investigation report and underlying evidence, Rodger Goodell, the Commissioner of the NFL, determined the domestic violence allegations were substantiated and that Elliott should be suspended for six games.  Under the collective bargaining agreement between the NFLPA and the NFL, a player has the right to contest before an arbitrator a player discipline determination by the league.  Elliott invoked that right and Harold Henderson, a former NFL executive, presided over the August 29–31, 2017 arbitration hearing.  When the NFLPA filed this lawsuit and moved for a preliminary injunction on August 31, 2017, Henderson had indicated a decision was forthcoming, but had not yet issued the decision.

On September 5, 2017, the district court held a preliminary injunction hearing.  That same day, the arbitrator issued his decision upholding the NFL's six-game suspension of Elliott.  On September 8, 2017, the district court enjoined the NFL from enforcing Elliott's six-game suspension.  The NFL moved this court for a stay of the district court's injunction on September 15, 2017.  We VACATE the district court's preliminary injunction and REMAND to the district court with instructions to dismiss the case.

The NFL contends the district court lacked subject matter jurisdiction under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to issue the preliminary injunction.[1]  While preliminary injunctions are generally reviewed under an abuse of discretion standard, *de novo* review is appropriate where "a district court's ruling rests solely on a premise as to the applicable

---

[1] The parties agree that the Federal Arbitration Act does not confer subject matter jurisdiction on the district court. *Nat'l Football League Players Ass'n v. Nat'l Football League*, 4:17-cv-00615, 2017 WL 3940545, at *3 (E.D. Tex. Sept. 8, 2017).  Therefore, the only basis for jurisdiction in the district court would be pursuant to the LMRA.

2

No. 17-40936

rule of law" and the applicable facts are established or of no controlling relevance. *United Offshore Co. v. S. Deepwater Pipeline Co.,* 899 F.2d 405, 407 (5th Cir. 1990). On appeal, a court may also examine the basis for jurisdiction *sua sponte. Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Thus, we must examine jurisdiction whenever subject matter jurisdiction appears "fairly in doubt." *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). Questions of subject matter jurisdiction cannot be forfeited or waived and are reviewed *de novo. Hous. Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014).[2] "[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567, 570 (2004).

Under the LMRA, a lawsuit for violations between an employer and a labor organization must satisfy the following three elements: "(1) a claim of violation of (2) a contract (3) between an employer and a labor organization." *Carpenters Local Union No. 1846 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth*, 690 F.2d 489, 500 (5th Cir. 1982); 29 U.S.C. § 185(a). The NFLPA argues that because Elliott has stated a claim that satisfies these three elements, the district court was vested with jurisdiction over this case. In response, the NFL argues that jurisdiction only vests under the LMRA if Elliott exhausts his contractual remedies and that

---

[2] The NFLPA contends the district court's decision should be reviewed under an abuse of discretion standard. However, the court first determines the question of subject matter jurisdiction, which is reviewed *de novo. See Hous. Refining*, 765 F.3d at 400. Because the court finds the question of subject matter jurisdiction dispositive, it need not address the proper standard of review for the district court's preliminary injunction.

No. 17-40936

the lack of a final arbitral decision at the time of filing the complaint is a fatal jurisdictional defect.[3]

It has long been established that "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). "If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement." *Id.* at 653. The "grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Outside of limited circumstances, the failure to "fully exhaust[]" contracted for "grievance procedures" places an employee's claim for breach of a collective bargaining agreement beyond "judicial review." *Vaca v. Sipes*, 386 U.S. 171, 184–85 (1967) (discussing situations where an "employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures"). While courts have jurisdiction to enforce collective bargaining contracts, "where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute." *Misco*, 484 U.S. at 37. Our circuit holds that federal courts lack subject matter jurisdiction "to decide cases

---

[3] The dissenting opinion's citation to *Houston Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F,3 396 (5th Cir. 2014) is a red herring. The issue in *Houston Refining* was whether the mere allegation that a collective bargaining agreement existed was sufficient to support jurisdiction under the LMRA. *Id.* at 402. There is no dispute here that a collective bargaining agreement existed. At issue is whether there was a repudiation of that collective bargaining agreement to trigger an exception to the exhaustion requirements for a court to exercise subject matter jurisdiction.

alleging violations of a collective bargaining agreement . . . by an employee against his employer unless the employee has exhausted contractual procedures for redress." *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000).

The NFLPA argues, following the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510–11 (2006), that *Meredith* is no longer good law and exhaustion should not be considered as an issue of subject matter jurisdiction. *Arbaugh* addressed when the term "jurisdiction" is properly utilized. 546 U.S. at 510. The Court stated at times the term had been applied to procedural requirements that "are not properly typed 'jurisdictional.'" *Id.* Particularly in the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy," the Court stated that it, among other courts, "ha[d] been less than meticulous" in the use of the label. *Id.* At issue in *Arbaugh* was whether the threshold number of employees for the application of Title VII to an employee's claim was an element of a claim for relief or a jurisdictional issue. *Id.* at 516. The Court held that because Congress had not ranked the statutory limitation on coverage in Title VII as jurisdictional, "courts should treat the restriction as nonjurisdictional." *Id.* The Court further clarified in *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011), "that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." Claims-processing rules, which are rules "requiring that a party take certain procedural steps at certain specified times," are not jurisdictional—even if mandatory—unless Congress clearly indicated the rule was "jurisdictional." *Id.* at 435–46. However, the Court held there were no "magic words" Congress needed to invoke and if there was "a long line of this Court's decisions left undisturbed by Congress" treating a requirement as jurisdictional, the Court would "presume that Congress intended to follow that course." *Id.* at 436.

As discussed above, the Supreme Court has long treated the exhaustion of grievance procedures provided for in collective bargaining agreements as jurisdictional. *See Vaca*, 386 U.S. at 184–85 (discussing when judicial review is available if grievance procedures have not been exhausted); *Misco*, 484 U.S. at 37 (holding jurisdiction to enforce a collective bargaining agreement only vests once grievance and arbitration procedures are exhausted). Moreover, exhaustion is not a claims-processing rule that goes to the timing of filing a lawsuit. Instead, it is a rule reflecting the forum in which an employee's remedy lies, which is the grievance procedures to settle disputes under the LMRA. *See Maddox*, 379 U.S. at 653 ("Congress has expressly approved contract grievance procedures as a preferred method for settling disputes . . . ."); 29 U.S.C. § 173(a). Further, following *Arbaugh*, this court has not overruled its decision in *Meredith*.[4] Given that Congress has left undisturbed the Supreme Court precedent holding the exhaustion of remedies is a jurisdictional prerequisite to bring an action alleging a breach of a collective bargaining agreement, the court declines to hold that *Meredith* is no longer good law in light of *Arbaugh*.

The NFLPA's lawsuit on Elliott's behalf was premature.[5] The procedures provided for in the collective bargaining agreement between the

---

[4] "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law . . . ." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

[5] Importantly, even if exhaustion were merely a mandatory claim-processing rule after *Arbaugh*, Elliott's failure to exhaust his remedies would still preclude our review here. *See Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012) (stating that "calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored"). Here, the NFL timely raised that Elliott had failed to exhaust his remedies before filing suit. An employee must first resort to the procedures provided for in a collective bargaining agreement before filing a lawsuit. *Boone v. Armstrong Cork Co.*, 384 F.2d 285, 288 (5th Cir. 1967). Decisions from the Sixth and Seventh Circuits support holding that the exhaustion of remedies provided for in a collective bargaining agreement is mandatory and any timely raised defect at the litigation's outset cannot be cured by the subsequent issuance of an arbitral award. *See Kaiser v. U.S. Postal Service*, 908 F.2d 47, 49–50 (6th Cir. 1990) (holding

No. 17-40936

NFL and NFLPA were not exhausted. The parties contracted to have an arbitrator make a final decision. That decision had not yet been issued. Although the NFLPA argues there were final procedural rulings, those rulings were not necessarily indicative of the arbitrator's final decision. At the time the NFLPA filed the complaint, it was possible the arbitrator could have issued a final decision that was favorable to Elliott. Elliott cannot show it was futile to wait for a final decision simply because he believed the arbitrator would issue an unfavorable ruling. As there was no final decision, Elliott had not yet exhausted the contracted-for remedies.

We next turn to whether Elliott's failure to exhaust his remedies was excused. There are three exceptions to the exhaustion requirement: "(1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; or (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group which is in large part chosen by the employer and union against whom his real complaint is made."

---

that exhaustion of the arbitration and grievance procedures set out in the collective bargaining agreement was required where an employee alleged the union was not processing the claim in a timely manner); *Macon v. Youngstown Sheet & Tube Co.*, 698 F.2d 858, 861 & n.2 (7th Cir. 1983) (holding there was a failure to exhaust remedies where an employee filed a lawsuit while an arbitration pursuant to a collective bargaining agreement was ongoing, even though a final arbitral award had subsequently issued).

Our holding in *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165 (5th Cir. 2014) does not compel us to a contrary conclusion. *Gorman* addressed whether under the Texas Commission on Human Rights Act (TCHRA) a right-to-sue letter was a jurisdictional requirement or a condition precedent, such that any defect could be cured after the lawsuit was commenced. *Id.* at 169. *Gorman* held that the right to sue requirement was not jurisdictional based on a Texas Supreme Court case interpreting the TCHRA, which harmonized Texas's law with the United States Supreme Court's holdings that Title VII right-to-sue letters are mandatory not jurisdictional. *Id.* at 169–70. Whether exhaustion was mandatory here does not turn on interpreting whether a prerequisite to filing a lawsuit is a jurisdictional requirement under state law.

7

*Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (internal citations omitted).[6]

The NFLPA only argues the repudiation exception to the exhaustion requirements applies. An allegation that an employer has repudiated the grievance process is not substantiated merely by its "refusal to accept an employee's position with respect to a grievance."[7] *Id.*; *see also Meredith*, 209

---

[6] The dissenting opinion argues that the existence of exceptions to the exhaustion requirement undermines the NFL's argument that exhaustion is a jurisdictional prerequisite. However, these exceptions are better thought of as exceptional circumstances in which arbitral processes are deemed "concluded" absent final arbitral awards. Here, the mere fact that the record was closed and the arbitrator had issued final evidentiary rulings is not an exceptional circumstance where we should deem the arbitral process as concluded absent a final award. The existence of adverse evidentiary rulings against a party does not indicate that it is a foregone conclusion that the arbitrator will issue an award adverse to that party. An adverse evidentiary ruling does not a judgment make.

[7] The dissenting opinion conflates a claim for breach of a collective bargaining agreement with an allegation that the employer repudiated the collective bargaining agreement. An allegation that an employer did not abide by the terms of a collective bargaining agreement during the grievance process is not equivalent to an allegation the employer refused to participate in the grievance procedures provided by the collective bargaining agreement. An allegation of the latter is required to show the repudiation exception applies.

Citing an out-of-circuit case, the dissenting opinion argues it has not conflated a claim for breach of a collective bargaining agreement with a claim for repudiation of a collective bargaining agreement. *Ramirez-Lebron v. International Shipping Agency, Inc.*, 593 F.3d 124 (1st Cir. 2010), however, is easily distinguishable. *Ramirez-Lebron* involved two groups of employees with conflicting seniority claims, where one group of employees and the employer allegedly entered into a "sham, secret agreement" that was submitted to the arbitrator. 593 F.3d at 127–28. Both groups of employees were supposed to appear before an arbitrator, but that hearing was suspended and the arbitrator subsequently issued an award allegedly based on the secret agreement between only one group of employees and the employer, without the second group of employees ever participating in the arbitral process. *Id.* at 128–29, 135. The second group of employees alleged the employer breached the collective bargaining agreement and repudiated the arbitration process by inducing the arbitrator to issue an arbitral award based on a fraudulent scheme. *Id.* at 128. The *Ramirez-Lebron* employer simultaneously breached and repudiated the collective bargaining agreement because it allegedly fraudulently induced the arbitrator to enter an award benefitting one group of employees, which had the effect of excluding from the arbitral process another group of employees with access to that same process under the collective bargaining agreement. *Id.* at 134–35. Here, the dissenting opinion admits "there is no claim of fraud." Likewise, here, there is no allegation a party is being excluded from the arbitration process, as the group of plaintiff employees were in *Ramirez-Lebron*.

No. 17-40936

F.3d at 403 (holding the repudiation exception applied where an employer claimed the employee "was not covered by the collective bargaining agreement and did not consider her grievance"). "An employer can obviously take a stance contrary to that of the employee during the grievance process without being deemed to have repudiated that process." *Rabalais*, 566 F.2d at 520. Here, it is undisputed the NFL and Elliott were engaged in arbitration as provided for under the collective bargaining agreement. Unlike *Meredith*, where the employer refused to consider the grievance under the collective bargaining agreement, the NFL cannot be said to have repudiated the agreement here. The NFLPA takes issue with the outcome and fairness of the arbitration proceedings. However, for the repudiation exception to the exhaustion requirements to apply, the NFL would have had to completely refuse to engage in the process. *See Meredith*, 209 F.3d at 403. Accordingly, the court finds the repudiation exception does not apply and Elliott was required to exhaust his contractual remedies before filing his lawsuit.

When the NFLPA filed the complaint on August 31, 2017, the arbitrator had not yet issued his decision. Although the district court issued the injunction on September 8, 2017, and the arbitrator had previously issued his decision on September 5, 2017, jurisdiction depends on the facts as they exist when the complaint was filed. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1982). The district court, therefore, lacked subject matter jurisdiction when it issued the preliminary injunction.[8]

---

[8] Much of the dissenting opinion is devoted to examining the merits of the NFLPA's lawsuit. While these arguments and concerns about the arbitration process may have merit, they must be considered by a court with proper jurisdiction. *See Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 ("When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case."); *Morrison v. Nat. Austl. Bank, Ltd.*, 561 U.S. 247, 254 (2010) (noting that subject matter jurisdiction is "an issue quite separate from the question of whether the allegations the plaintiff makes entitle him to relief").

No. 17-40936

For the foregoing reasons, we VACATE the district court's preliminary injunction and REMAND to the district court with instructions to dismiss the case.

No. 17-40936

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

This is a case about undisclosed information, uninformed decisions, and an arguably unfair process in determining whether Dallas Cowboys running back Ezekiel Elliott should be punished for allegations of domestic violence made by an accuser who was found not credible by the NFL's lead investigator, who was then excluded from meetings with NFL Commissioner Roger Goodell. Because I conclude that the district court had subject matter jurisdiction, I respectfully dissent.

In 2016, allegations of domestic violence were made against Elliott in Columbus, Ohio. Columbus authorities investigated the allegations and declined to arrest or prosecute Elliott based on conflicting information and insufficient evidence.

Pursuant to its Personal Conduct Policy, the National Football League (NFL) launched a year-long investigation.[1] Kia Roberts,[2] NFL Director of Investigations, and Lisa Friel, NFL Senior Vice President and Special Counsel for Investigations, conducted the investigation and prepared a report. Roberts is the only investigator who participated in all 22 of the witness interviews, including those with Elliott's accuser, who was interviewed six different times.[3] Friel was not present for any of the witness interviews. Roberts, not Friel, was then excluded from the meetings with Goodell and his outside advisors to discuss the allegations against Elliott and whether Elliott should receive any punishment. Goodell is the person solely responsible, under the

---

[1] Under the NFL Personal Conduct Policy: "In cases where a player is not charged with a crime, or is charged but not convicted, he may still be found to have violated the Policy if the *credible evidence establishes* that he engaged in conduct prohibited by this Personal Conduct Policy." (Emphasis added).

[2] Roberts is a former assistant district attorney who prosecuted domestic violence and other cases.

[3] Various other NFL or NFLPA representatives were present for some of the interviews.

NFL-National Football League Players Association (NFLPA) Collective Bargaining Agreement (CBA), for punishing NFL players. We now know that Roberts' recommendation was that there should be no punishment.

On August 11, 2017, the NFL sent Elliott a letter informing him of Goodell's decision to suspend him for six games. The NFLPA appealed on behalf of Elliott pursuant to the CBA. Goodell assigned the appeal to Harold Henderson.

During the arbitration proceedings, the NFLPA sought to compel the testimony of Roberts and the accuser. They also asked that the NFL provide the investigative notes. Again, Roberts was the only investigator to interview all witnesses, including the accuser, who is the sole witness to any alleged domestic violence. Two of the accuser's six interviews were transcribed and are in the record. Roberts took notes on the other four interviews, but the NFL did not turn those notes over to the NFLPA. Additionally, the NFL objected to the request for Roberts to testify on the basis that her testimony would be "cumulative and unnecessary" in light of Friel's attendance at the hearing. Importantly, Roberts had formed the opinion that the accuser was not credible.

Henderson granted the motion to compel as to Roberts, but denied the requested relief as to the accuser and the investigative notes. During arbitration, it was revealed that Goodell had met with Friel and other advisors, outside the presence of Roberts, to decide Elliott's punishment. The NFLPA then sought to compel Goodell's testimony to determine what information he had been provided before he decided to impose the suspension. Henderson denied the request. The three-day arbitration hearing ended on August 31, 2017, the record was closed, and Henderson stated that he would announce his decision shortly thereafter.

The following day, September 1, 2017, the NFLPA sued the NFL on behalf of Elliott in the Eastern District of Texas seeking vacatur of the pending

decision of the arbitrator based on the factual scenario presented in this case. The NFLPA also filed an emergency motion for a temporary restraining order and a preliminary injunction. The district court conducted a preliminary injunction hearing on September 5, 2017. Also on September 5, Henderson issued his decision affirming Goodell's six-game suspension, and the NFL filed a complaint in the Southern District of New York (Case No. 1:17-CV-06761-KPF) seeking to confirm and enforce the arbitration award.

The Texas district court delayed ruling on the NFLPA's emergency motion and called for additional briefing due by Wednesday, September 6, 2017, on jurisdiction and the issuance of the arbitrator's decision. On September 8, 2017, the district court entered a Memorandum Opinion and Order granting the NFLPA's motion and enjoined the suspension of Elliott pending the court's final ruling on the petition.

On September 11, 2017, the NFL filed a notice of appeal and an emergency motion to stay the injunction in the district court. The NFL acknowledged the existence and requirements of Rule 8 of the Federal Rules of Appellate Procedure, but included the following statement: "Absent an order from this Court granting a stay, Respondents intend to seek a stay from the Fifth Circuit tomorrow morning." Also on September 11, the district court entered an order for expedited briefing on the NFL's emergency motion for stay. The NFL's reply was due September 13 at 5 p.m. and the NFLPA's response was due September 15 at 5 p.m. Both parties filed their briefs on September 13.

Rather than wait for the district court to rule on its motion, the NFL then filed on September 15, 2017, an Emergency Motion for Stay Pending Appeal with this court seeking a ruling by September 19 and no later than September 26. The district court denied the NFL's stay on September 18. This court allowed both deadlines to pass, as there is no emergency. However, panel

No. 17-40936

members called for supplemental briefing on the issue of jurisdiction and set the matter for oral argument.

The majority now concludes that the district court lacked subject matter jurisdiction when it issued the preliminary injunction, vacates, and remands with instructions to dismiss. I disagree and conclude that the district court indeed had subject matter jurisdiction.[4] I agree with the majority that this court reviews questions of subject matter jurisdiction de novo. But I disagree with the majority's repeated suggestion that we are here on the appeal of the district court's preliminary injunction as opposed to the NFL's motion for stay.

The majority adopts the NFL's position that the district court lacked subject matter jurisdiction because the NFLPA filed the action prematurely without having exhausted contractual procedures under the CBA, i.e., awaiting the issuance of the arbitrator's written decision. Specifically, they assert that exhaustion is required under the Labor Management Relations Act (LMRA) and that exhaustion means the final decision of the arbitrator must have issued. However, neither the NFL nor the majority cites a single case where a court held that the petitioner failed to exhaust in a situation like this. Instead, both cite various cases which are dissimilar and ignore cases which do not support a conclusion of lack of subject matter jurisdiction.

The district court granted the preliminary injunction, saying: "Based upon the preliminary injunction standard, the Court finds, that Elliott did not receive a fundamentally fair hearing, necessitating the Court grant the request for preliminary injunction." The court concluded that it had jurisdiction under section 301 of the LMRA. As the court said in its September 8 order granting the stay:

---

[4] The district court also should have been allowed, in the first instance, to consider the motion to dismiss presently pending before it.

No. 17-40936

For a federal court to maintain jurisdiction over the alleged breach of a collective bargaining agreement, an LMRA "claim must satisfy three requirements: (1) a claim of a violation of (2) a contract (3) between an employer and a labor organization." *Carpenters Local Union 1846 of United Bhd. of Carpenters and Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 500 (5th Cir. 1982). As long as these three requirements are met an individual can sue for breach of the collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Smith v. Evening News Ass'n,* 371 U.S. 195 (1962)). Here, the NFLPA alleges a violation of a contract, the CBA. The CBA was entered into by the NFLPA, a labor organization, and the NFL, an employer.

Further, as the NFL conceded at oral argument, there is no explicit requirement of exhaustion in the LMRA. The LMRA states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The NFLPA asserts that the district court correctly exercised jurisdiction under the LMRA and cites *Houston Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396 (5th Cir. 2014), for the proposition that "an 'alleged violation' [of a CBA] satisfies section 301(a)'s jurisdictional requirement." *Id.* at 403 (citing *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 658 (1998). Further, "the alleged violation of a labor contract is both necessary and sufficient to invoke federal subject-matter jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a)." *Id.* at 405-06. This court concluded that, "[b]ecause a party

need only allege the violation of a labor contract to invoke federal subject-matter jurisdiction under section 301, this requirement was easily satisfied here." *Id.* at 406. Such is the case here and our binding authority controls. Thus, I agree with the NFLPA that exhaustion is a prudential consideration and not a strict jurisdictional prerequisite.

Additionally, the Supreme Court in *Textron* made clear that: "'Suits for violation of contracts' under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated." *Textron*, 523 U.S. at 657. The NFLPA asserts that the NFL violated the CBA. That alleged violation is all that is required to allow the district court to exercise jurisdiction.

Moreover, as the majority concedes, the controlling authority explicitly states that an employee is only required to "*attempt* use of the contract grievance procedure." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) (emphasis added). With regard to the majority's quote from *Maddox* regarding the exclusivity of a grievance procedure, in context, that quote is actually referencing "[a] contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit . . . ." *Id.* at 653. There was no complete sidestep of available grievance procedures here. Instead, the NFLPA clearly attempted to use the contract grievance procedure set out in the CBA, as acknowledged by the majority. The NFLPA filed a lawsuit only after discovery of the NFL's alleged violations of the CBA and the adverse rulings which prevented exploration of the extent of the alleged violations.

Regardless, in *Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518 (5th Cir. 1978), this court acknowledged the following exceptions to exhaustion:

> (1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation, *Vaca v.*

No. 17-40936

*Sipes, supra* ; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract, *id.; Boone v. Armstrong Cork Co.*, 384 F.2d 285 (5th Cir. 1967); or (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group "which is in large part chosen by the (employer and union) against whom (his) real complaint is made." *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). *See* generally *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870 (3d Cir. 1972).

*Id.* at 519. *See also Maddox*, 379 U.S. at 650; and *Vaca v. Sipes*, 386 U.S. 171, 184-185 (1967) (discussed more fully herein). This court has also said that an individual may attack an arbitration award where the grievance procedure was "substantially inadequate." *Harris v. Chem. Leaman Tank Lines, Inc.*, 437 F.2d 167, 171 (5th Cir. 1971).

The *Rabalais* court noted that "[a]n employer can obviously take a stance contrary to that of the employee during the grievance process without being deemed to have repudiated that process." *Rabalais*, 566 F.2d at 520. However, it is undisputed that failure to comply with the terms or procedures of the CBA is a breach.

These exceptions establish that, "full exhaustion is not inevitably required by a court before it will exercise jurisdiction under §301." *Ramirez-Lebron v. Int'l Shipping Agency, Inc.*, 593 F.3d 124, 132 (1st Cir. 2010) (quoting *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 18 (1st Cir. 1979)). Further, any exhaustion requirement is not "unlimited," particularly where "circumstances have impugned the integrity of the arbitration process." *Id.* at 132. In *Ramirez-Lebron*, the First Circuit said that "[t]his appeal in the end is about the fundamental fairness of the arbitration *process*." *Id.* at 134 (emphasis original). The court further concluded, consistent with *Vaca*, 386 U.S. at 185, that an employer is "estopped" from using a CBA or an arbitration

award to shield itself from answering factual allegations that may have tainted the award. *Id.* at 134-135. More significantly, the *Ramirez-Lebron* court concluded, under *Vaca*, that the employer's breach of the terms of the CBA constituted repudiation of the grievance procedures. *Ramirez-Lebron*, 593 F.3d at 134. *See also Vaca*, 386 U.S. at 185. This authority directly contradicts the majority's statement, without authority, that this opinion conflates a claim for breach of a CBA with a claim for repudiation of a CBA.[5]

The district court here concluded that, under the second *Rabalais* exception above, the NFL had repudiated the required procedures set forth in the CBA. The court further found, based upon the preliminary injunction standard, that Elliott did not receive a fundamentally fair hearing.

Under Article 46 of the CBA, a player is entitled to counsel and has the right, along with the NFLPA and NFL, "to attend all hearings provided for in this Article and to present, by testimony or otherwise, any evidence relevant to the hearing." Art. 46 § 2(b). Additionally, "the parties shall exchange copies of any exhibits upon which they intend to rely no later than three (3) calendar days prior to the hearing." Art. 46 at § 2(g)(i).

The NFLPA and Elliott were arguably denied the right to "present, by testimony or otherwise, any evidence relevant to the hearing." At the hearing, the NFL attempted to keep Roberts, the only investigator to interview all witnesses, from testifying and denied access to the investigative notes and the opportunity to question the accuser. The NFL's arbitrator then denied access to the investigative notes. Four of the interviews with the accuser were not transcribed, but were in those notes. The arbitrator also denied the

---

[5] The majority attempts to distinguish *Ramirez-Lebron*. However, no party was excluded from arbitration in that case. Although there are no explicit allegations of fraud here, there are explicit allegations of a breach of contract which impugned the integrity of the process and resulted in repudiation.

opportunity to question the accuser, who was the only witness to any alleged domestic violence. After the NFLPA was successful in compelling Roberts' testimony, the NFLPA discovered that Roberts was excluded from meetings with Goodell and outside advisors. The arbitrator then denied the opportunity to question Goodell. The revelation of Roberts' exclusion suggests that Goodell was not fully informed before making his decision about the appropriate punishment. That is important for two reasons: 1) The arbitrator properly gave deference to the commissioner; and 2) all of that is "evidence relevant to the hearing." Also, as the NFL clearly relied on the accuser's interviews and there were only transcripts of two of those six interviews, the investigative notes likely should have been exchanged.

All of these actions "impugned the integrity of the arbitration process." *See Ramirez-Lebron*, 593 F.3d at 132. Thus, the NFL's refusal to follow those agreed upon procedures in the CBA resulted in a repudiation of the grievance procedure sufficient to vest jurisdiction in the district court. *Id*. at 134. *See also Vaca*, 386 U.S. at 185; and *Rabalais*, 566 F.2d at 519.

To briefly address the authority cited by the majority, I begin with *Vaca*, which the majority cites for the proposition that, "[o]utside of limited circumstances, the failure to 'fully exhaust[]' contracted for 'grievance procedures' places an employee's claim for breach of a collective bargaining agreement beyond 'judicial review.'" However, that is not what *Vaca* says. *Vaca* states: "However, if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." *Vaca*, 386 U.S. at 184. Further, the court said:

> However, because these contractual remedies have been devised
> and are often controlled by the union and the employer, they may

well prove unsatisfactory or unworkable for the individual
grievant. The problem then is to determine under what
circumstances the individual employee may obtain judicial review
of his breach-of-contract claim despite his failure to secure relief
through the contractual remedial procedures.

*Id.* at 184-185. The Court went on to say: "To leave the employee remediless
in such circumstances would . . . be a great injustice. We cannot believe that
Congress, in conferring upon employers and unions the power to establish
exclusive grievance procedures, intended to confer . . . such unlimited
discretion to deprive injured employees of all remedies for breach of contract."
*Id.*

The *Vaca* Court in no way said that only the arbitrator's written award
constitutes exhaustion and that failure to fully exhaust places a breach of
contract claim outside judicial review. Moreover, *Vaca* cites *Maddox* for the
proposition that "it is settled that the employee must *at least attempt* to
exhaust exclusive grievance and arbitration procedures established by the
bargaining agreement." *Vaca*, 386 U.S. at 184-185 (emphasis added). The
attempt to exhaust was made here and the contractual remedy proved
unsatisfactory – those are the only requirements under *Vaca*.

The majority relies on *Meredith v. Louisiana Federation of Teachers*, 209
F.3d 398 (5th Cir. 2000), for the proposition that a federal court lacks
jurisdiction absent exhaustion. However, the employee in *Meredith* failed to
take the final step in the grievance procedure, i.e., "seeking to compel
arbitration." *Id.* at 402. Importantly, this court did not say that Meredith was
required to await the arbitrator's written decision, but rather that she had to
at least seek to compel arbitration – as is consistent with Supreme Court
precedent requiring an attempt. Here, the NFLPA took the final required step
in the grievance procedure and attempted arbitration. Further, in *Meredith*,
this court concluded that the district court properly found the employer was

estopped from raising the defense of non-exhaustion of remedies because it repudiated the contract. *Id*. at 402-03. Additionally, because *Meredith* is easily distinguished, there is no violation of the rule of orderliness.

The majority also cites *United Paperworkers International Union, AFL-CIO v. Misco*, Inc., 484 U.S. 29 (1987). *Misco* involved the attempt to set aside a final arbitration award and did not involve a breach of contract or an alleged issue of exhaustion. The general statement quoted by the majority neither contradicts nor complements the other authority cited herein. However, notably, the *Misco* Court said: "Of course, decisions procured by the parties through fraud or through the arbitrator's dishonesty need not be enforced." *Id*. at 38. Here, there is no claim of fraud, but, without the ability to question Goodell under these circumstances, it is likely impossible to determine whether information was intentionally withheld from him or whether he was provided false information.

Further, the cases the majority cites from the Sixth and Seventh Circuits both involved ongoing proceedings, unlike here, where the proceedings had concluded and the record was closed.

Additionally, the majority states that the "parties contracted to have an arbitrator make a final decision." The parties also contracted to be allowed "to present, by testimony or otherwise, any evidence relevant to the hearing" and "to exchange copies of any exhibits upon which they intend to rely no later than three (3) calendar days prior to the hearing." Art. 46 § 2(b), (g)(i). The NFLPA alleges a breach of that contract. The record was closed and there was no chance of the arbitrator revisiting any erroneous rulings prior to the issuance of a written decision. The LMRA does not explicitly require exhaustion, the binding authority only requires an attempt, and it is undisputed that there are exceptions. Thus, the NFLPA's complaint in district court was not premature.

No. 17-40936

For the reasons stated herein, I conclude that the district court properly exercised subject matter jurisdiction. Also, as the NFL is unable to show a likelihood of success on the merits or any irreparable injury for purposes of a stay, I would deny the motion for stay. Moreover, "the maintenance of the status quo is an important consideration in granting a stay." *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978). The status quo is Elliott continuing to play pending resolution of the claim filed below.